## Benton Hanchett and another v. Robert McQueen and others.

*Equity pleading and practice: Specific performance: Contract: Execution: Agent.* In a bill for the specific performance of a contract made by an agent it is unnecessary to set forth the manner of its execution or any thing more than the fact of the execution, and the contract must then be proved as a valid one.

*Contracts: Execution by agent: Proof of authority: Ratification.* The absence of proof of written authority to an agent to execute a land contract is unimportant in a case where there is full proof of ratification by both parties, by demand and receipt of payment, and by possession and improvement.

*Specific performance of land contract: Conflicting interests of defendants: Interpleader.* Where there are conflicting interests set up by the vendee in a land contract and his wife and one to whom such vendee has assigned in trust for creditors, it is competent for the vendor, in his bill for specific performance, to ask to have the respective rights of these conflicting claimants determined, for this is necessary to the determination as to whom conveyances should be made, and on what terms; and the bill in such case, where there is no conflict concerning the complainant's rights or duties, resembles somewhat a bill of interpleader, and rests on similar equities.

*Equity pleading and practice: Specific performance: Parties: Appeals: Errors that do not prejudice.* To such a bill the beneficiaries under the trust, *i. e.*, the creditors of the vendee, whether allowable parties or not, are at least not necessary parties; and an objection for the want of such parties loses all force in an appeal (which lies only in favor of persons aggrieved) from a decree which, so far as such beneficiaries are concerned, directs the property to be conveyed in exact accordance with the claim set up in the appellants' pleadings.

*Equity pleading and practice: Appeals: Decree: Errors that do not aggrieve the appellants.* The decree in this case is affirmed as not being prejudicial to the rights of the appellants, though it was not as favorable as it ought to have been to another defendant who did not appeal.

*Land contract: Assignment: Husband and wife: Homestead.* After an assignment of a land contract to another in trust for creditors, it is not competent for the wife of the assignor, who had not joined in the assignment, by her arbitrary choice to carve out of parts of several parcels covered by the contract a homestead location, and thereby fix at her own caprice the boundaries of the premises which were to be regarded as not included within the grant.

*Heard April 16 and 20. Decided April 27.*

Appeal in Chancery from Saginaw Circuit.

*Gardner K. Grout* and *Gaylord & Hanchett,* for complainants.

*John J. Wheeler,* for defendants McQueen.

*N. S. Wood* and *W. A. Clark,* for defendant Newton.

CAMPBELL, J:

This was a bill filed for the specific performance of a contract whereby Harry Miller, now deceased, on the first day of August, 1867, agreed to sell to Robert McQueen block seventeen in Miller's addition to the city of Saginaw, containing eight city lots, for one thousand nine hundred dollars, payable with interest in four yearly instalments, with a condition requiring improvements to the amount of one thousand dollars to be made within a year.

During the same year McQueen built a house in the center of the block for a residence, in which he still resides. No attempt was made to set apart any less than the entire block as a homestead until 1870, when Mrs. McQueen, in her own name, and without her husband's joint action, notified Miller that she claimed a parcel described, seventy-five feet square in the center of the block, with a strip sixteen feet wide running out to the street on one side of the block. This parcel cut considerable portions out of four lots, and greatly damaged them.

In June, 1868, McQueen transferred this contract to defendant Newton, who took in trust to sell it and pay certain debts due to himself in the first place, and then certain other debts named, rendering the balance to McQueen. Subsequently in the same year he made a further arrangement to take care of other debts, whereby he claims McQueen gave up the entire contract to him. As the court held him a trustee for the whole, and not absolute owner, and as he has not appealed, this question is not important.

McQueen never paid any thing whatever on the contract, and Newton was compelled to pay various sums due upon it, and also taxes not paid by McQueen, such payments with interest amounting to more than one thousand seven hundred dollars. He also paid McQueen's debts to the amount with interest of one thousand three hundred and fifty-two dollars and thirty-three cents; and there is about one thousand dollars of debts included in the trust still unpaid.

A controversy existing between the McQueens and New-

ton as to their rights, so that neither Miller nor his executors could deal safely with either, this bill was filed to obtain payment on the contract, and tender conveyances to such of the parties as should be found entitled.

The principal controversy turned upon the alleged homestead right in the dwelling and selected land, and upon Newton's rights. The testimony of McQueen showed the improvements to have cost over three thousand dollars, and to have made the block worth six thousand five hundred dollars, giving value of the balance three thousand five hundred dollars, or considerably less than Newton's claims. The court below treated the whole reserve as a valid homestead in which Newton took no interest whatever, by reason of not having Mrs. McQueen's signature to the transfer of the contract. The decree gave this to the McQueens on condition of paying the balance due complainant, which, in addition to the one thousand five hundred dollars homestead value allowed by the constitution, made up less than its whole cost value as sworn by McQueen, and in default of such payment required it to be sold first to pay complainant, before resorting to the rest. The balance of the property was declared subject to the trust, and directed to be conveyed to Newton for that purpose unless redeemed by McQueen. From this decree the McQueens appealed.

It is objected, on formal grounds, that the bill does not properly describe the contract; that it improperly attempts to settle rights between the defendants; and that the parties entitled to payment under the trust are not brought in.

Objection is made that the contract, although made by an agent, is not so averred; and that it does not appear the agent was authorized in writing.

It is elementary doctrine that it is not necessary in pleading in chancery to aver any thing more than the execution of the contract, which must then be proven as a valid contract. But in this case the contract was set out *verbatim*, and nothing was left uncertain. No demurrer was put in, and the case went to issue on the merits. The absence of proof of written authority is unimportant, since there is the

fullest proof of ratification by both parties, by demand and receipt of payment, and by possession and improvement.

It was necessary to determine the rights of the defendants as between themselves, in order that it might be determined to whom conveyances should be made, and on what terms. For this purpose the bill resembles somewhat a bill of interpleader. There was no doubt concerning complainants' rights or duties. The only conflict was among the defendants, and its settlement was essential to the granting of specific performance. It has never been doubted that such rights may be disposed of in one suit and without cross-bill or other analogous bill.—*Thurston v. Prentiss, 1 Mich., 198.*

There is nothing in the objection that the beneficiaries under the trust are not parties. The property is to be conveyed in exact accordance, so far as they are concerned, with the claim set up in McQueen's answer, and McQueen is only interested in having that trust declared in accordance with his contract with Newton. Whether they would have been allowable parties or not, they are certainly not necessary in this controversy, and still less in an appeal that can only be taken by persons aggrieved. The McQueens cannot be damnified by leaving them out under such a decree as has been granted here.

The main grievance complained of is the requirement that the homestead shall be sold before resorting to Newton's share of the land.

It is very questionable how far the homestead rights of McQueen and his wife could properly be extended on the facts of this case, if that matter were open. But the decree goes so far that we do not feel willing to be considered as affirming its principles while the absence of an appeal by complainant or Newton prevents their review. We express no opinion upon the legal principles which must have led to the establishment of the homestead interest.

But it is manifest that the decree granted is more favorable than the McQueens could ask under any circumstances.

The house was so situated that it greatly impaired the

32 MICH.—4.

value of several of the lots as separate parcels, and the location of the enclosure was still more injurious. The choice made by Mrs. McQueen was not made until after Newton's rights attached, and she could not by her arbitrary choice fix the premises which were to be regarded as not within his grant, and avoid that grant by a location at her own caprice. The premises chosen as a homestead could not be so divided as to ascertain any parcel worth only one thousand five hundred dollars. She could not under any circumstances have made out a complete homestead right in that specific property, or in any property beyond an interest of one thousand five hundred dollars. The court, however, by the decree took out of Newton's grant the whole premises, representing a cost of about double that sum. That part of the premises was bound to contribute its full share to the purchase money and taxes. Newton had paid all that had gone to complainants on the contract, and had paid most of the taxes on the premises. His outlays had exceeded his proportion, and the homestead was clearly bound for the rest, if not to refund a part of his advances. The decree was therefore very favorable to the McQueens on this basis. It was equally favorable on the other ground, that the homestead right being only one thousand five hundred dollars, and the improvements having cost three thousand dollars, and upwards, a burden laid on it of less than one thousand five hundred dollars, left the homestead value at more than the full rate allowed, and discharged it of the proportionate contribution which would have come upon it if it had been expressly excepted in the first place on a lot of no more than the statutory value.

If there is any injustice in the decree, it has been done to Newton, and not to the other defendants. But as he has not appealed, the decree must be affirmed, with costs in favor of Newton and complainants, against Robert McQueen and Alicia McQueen.

COOLEY, J., and GRAVES, CH. J., concurred.