# Jaffrey & Co. v. McGough.

*Bill in Equity by Judgment Creditors, to set aside Convey-ance as Fraudulent.*

1. *Selection of homestead by debtor.*—In the selection of an exempt homestead by a debtor, from a larger tract of land (Code, § 2534), some discretion is necessarily allowed; but this discretion must be exercised within the bounds of reason and justice, and not in a manner entirely arbitrary and capricious. As a general rule, the selection should be made with reference to the lines and subdivisions of the government surveys, taking a forty-acre subdivision as a unit of measure, and em-bracing one solid and compact body of land, no one forty separated from the remainder, except, perhaps, by an intervening highway or water-course; and a selection which makes a tract of very irregular and fan-tastic shape, as shown by the diagram in this case, will not be allowed.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 16th September, 1885, by E. S. Jaffrey & Co., judgment creditors of John McGough, against him, his wife, and their children; and sought to set aside, on the ground of fraud, a conveyance of a large tract of land, executed by him to his wife and children, in consid-eration, as recited, of his indebtedness to each of them. On final hearing, on pleadings and proof, the chancellor set aside the conveyance as to the interest conveyed to the wife, but refused to set it aside as to the interest conveyed to the sons, holding that it was supported by a valid and sufficient con-sideration as to them; and his decree was affirmed by this court on appeal.—83 Ala. 202–08. In his decree, the chan-cellor ordered the register to report the debts due to the complainants, and also "report what portion of said lands said John McGough and Mary, his wife, may select and have set apart to them as their homestead, if they, or either of them, shall make such selection, not exceeding 160 acres." Under this order the register made his report, Sept. 18th, 1888, that said McGough and wife "have selected as their

[Jaffrey & Co, v. McGough.]

homestead the following described land, to-wit: Beginning at the S. E. corner of section 24, T. 13, R. 28, thence N. 21$\frac{3}{4}$° W., 16 chains, gives point of beginning," describing the tract by courses and distances, as shown by the diagram annexed, which is on p. 655 reproduced. The complainants objected to the allowance of this homestead, but the chancellor refused to consider the objection, because it had not been made before the register, and he confirmed and allowed the selection. This part of the decree is now assigned as error.

NORMAN & SON, for appellants.

H. D. CLAYTON, Jr., contra.

SOMERVILLE, J.—The only question raised for our consideration in this case, is the correctness of the chancellor's decree in the allowance of the homestead, as selected by the appellees, in the arbitrary and irregular form in which the selection was made, as illustrated by the peculiar diagram accompanying the record. It is not denied that the appellee, as debtor, is entitled to a homestead of 160 acres, not to exceed a valuation of two thousand dollars. But it is contended that this selection can not be made on arbitrary principles, unrestrained by any limit of discretion except the mere-caprice of the debtor.

We are satisfied this contention is correct, and that the debtor's power of selection must be confined within the bounds of reason and justice on the one hand, and can not be permitted to be entirely arbitrary and capricious, on the other.

Both the Constitution and the statutes of this State contemplate that the homestead, exempted from execution, or administration, in any allotment of its area that may be made, or any declaration of claim made and filed under the statute, shall be "selected," as the case may be, by the debtor, widow, or other claimant.—Const. 1875, Art. X, § 2; Code, §§ 2507, 2515, 2534, 2551. This power of selection necessarily involves some latitude of discretion, but it is also, ex vi termini, limited by the nature of the thing to be selected, and by those broad principles of justice and reason which must control and regulate the exercise of every legal right. The thing authorized to be selected is "the homestead" of the resident owner, "with the improvements and

appurtenances," of the area and value designated.—Code, §§ 2507, 2543. Where the allotment is made by commissioners, after levy of execution, and under an order of court, while regard is had to the selection of the defendant, it is provided that the commissioners must take the "land *most contiguous* to the dwelling, and including such dwelling and appurtenances."—Code, 1886, § 2534. Where the exemption is selected from administration by the widow, or guardian of minor children, it is regulated by section 2551 of the present Code. But the limitation contained in the latter section, restraining the selection to "land most contiguous to the dwelling," it may be observed, has been stricken out by a recent legislative amendment, approved February 28th, 1889.—Acts 1888-89, pp. 86-97. The selection in this case, being made by the debtor, is governed by section 2534; so that we need not consider what effect, if any, was accomplished by the amendment in question.

The appellee, then, was authorized to select the homestead owned by him, "with the improvements and appurtenances," embracing "the land most *contiguous* to the dwelling, and including such dwelling and appurtenances." This is nothing more, perhaps, than would be imported by the term *homestead* itself, which is defined to mean "the place of the house; a mansion-house, with adjoining land."—Worcester's Dict. And again: "A mansion-house; a person's dwelling; the place with the inclosure, or ground immediately contiguous; an abode; a home."—Imperial Dict. As said in a well considered case: " It is the home, and the adjoining land, where the head of the family dwells; the home farm. It does not extend to other tenements, lots and farms, that are not occupied personally by the owner and his family—houses in which they do not dwell, and farms on which they do not live."—*Hoitt v. Webb*, 36 N. H. 158.

This exempted "homestead" was supposed by the framers of our constitution and laws to have some definite dimensions, capable of reasonable identification, varying and shaded, it may be, in its boundaries by the principle of selection. This is assumed in the prohibition directed against its alienation by a married man, "without the voluntary signature and assent of the wife," duly acknowledged, and properly certified by the requisite officers.—Code, § 2508. As to what part of the occupied premises shall be deemed to fall within this area, all purchasers from the husband are required to take notice. The same is true of purchasers at

an execution sale, who buy a large tract including the home-
stead. They are put on notice as to what part of the land
the debtor may choose to select. What shall be the limits
on the discretion of the debtor's power of selection?

We assert, first, that it must be reasonable, and not purely
arbitrary and capricious, or fanciful.

If the limits of the homestead are already fixed, whatever
the shape or form of the tract, by actual occupancy and use,
and the area is within the amount exempted—160 acres—
there is no room for any exercise of discretion, much less of
caprice. A homestead, if we could suppose such a case,
fenced in the shape of an animal, a bird, a flower-garden, or
other fantastic shape, would not cease to be exempt from
execution on this account, provided it be of lawful area and
value, and the entire tract owned was in this particular
form. Although it is manifest that *a selection* in these
quaint forms, made from a large tract of land, would be un-
reasonable and capricious, and not allowable. If so, like the
cloud described by Hamlet to Polonius, it might just as well
be "in the shape of a camel," a "weasel," or a "whale," as in
any other that might be dictated by the fancy of the person
making the selection. So, where a disconnected tract of
land, not contiguous to the homestead, is *bona fide* and
habitually used as a part of it, and the two tracts together
do not exceed the area or value allowed, they may both be
selected in the shape in which they already exist. This is
on the principle, that "the *use* made of the land may deter-
mine its character as part of the homestead or not, as well
as its proximity to, or remoteness from the residence, or
mansion-house."—*H. & G. N. R. R. Co. v. Winter*,
44 Tex. 597, 611; *David v. David*, 56 Ala. 49; Thompson on
Homesteads, § 146. While the authorities are repugnant
in the conclusions reached on this subject, some of them
holding that the homestead tract must be in one solid com-
pact body, and can not consist of non-contiguous parcels,
this court has adopted the rule, that two tracts or lots may
be so connected in their particular use and appropriation
as to be exempted as one homestead, although they are not
contiguous. This ruling, however, has not been extended
further than to embrace two parcels, already used and ap-
propriated to homestead purposes, where they together do
not exceed the statutory area and valuation—*Dicus v. Hall*,
83 Ala. 159; *Prior v. Stone*, 19 Tex. 371; 70 Amer. Dec.
*note*, pp. 350–353. In such cases, there is no latitude for

the unjust exercise of caprice, fancy, or arbitrary will-power in making the selection. The selection, in a certain sense, is already made.

It is a fact not to be ignored, that the quantity of land exempted for homestead purposes in this State, and not in a city, town or village, is, and has always been, *a multiple of forty acres*, which is an established legal subdivision of land according to the survey of the General Government. The present real estate exemption in Alabama is 160 acres; and it has been at different times 40, 80, 160, and 320 acres,—each equally divisible by forty. The same is generally true as to other States, whose statutes we have had occasion to examine. Is there no significance in this fact? Is it merely accidental, or was it by design? Has it no just relation to the existing fact, that all the Government lands have been surveyed upon the basis of this *unit* of forty acres? It is commonly known that the acts of Congress, relating to the entry of public lands for homesteads, require such selections to be made according to the lines marked out by this survey. So, in common business transactions, involving the sales of land in bodies of any considerable size, the quantity sold, and the description given, accord usually with the public survey. The wisdom of this habit is only surpassed by its convenience. It has the advantage of following lines already fixed by high authority, and known from the permanent land-marks, and the surveys of which are easily accessible. Its strong tendency, therefore, is to prevent contentions as to land titles, and to promote public and private peace by quelling litigation.

These considerations induce us to believe, that it was intended that these lines of established governmental surveys should be regarded, as far as practicable, in regulating the selection of homesteads.—*Kildray v. Aldrich*, 71 Ill. 324. We adopt it, therefore, to govern as a general rule. Not that it will accomplish exact justice in all cases, for this is impossible with any fixed rule of law. There never was, and never in the nature of things can be, such a rule that will not work injustice, or bear with hardship in individual cases. The greatest good to the greatest number is the highest attainment of human wisdom in the enacting, or construing of laws.

Cases will no doubt arise in the future, as in the past, where *exceptions* must be established to this general rule of selection. Time and experience will develop the wisdom

and necessity of these exceptions. They need not be anticipated. For example, in one State, where only forty acres of land was exempt for use as a homestead, the dwelling was on one forty, and the barns, out-houses, garden and other appurtenances of the homestead were situated on the other adjoining forties, so that the selection of the several adjacent forties would embrace more than the law allowed. It was held that the government survey lines, in such a case, need not be followed, because impracticable.—*Kent v. Agard*, 22 Wis. 150. Other instances of an analogous character may be readily imagined.

It may be urged, that a selection by contiguous forties would often operate unjustly, in compelling the selection by a debtor, a widow, or a guardian, of land of inferior quality and insignificant value, and thus prevent the equal distribution of the more valuable lands. This is no doubt true. But the main object in view is the dwelling-house—a place of shelter and residence for the debtor—a home for the widow and children. As observed in a recent case by the Supreme Court of Texas, answering such a suggestion: "The object of the constitution was not to protect the home with 200 acres of the *most valuable* land that might be in a large tract, but to protect the house and the farm, tan-yard, mill, gin, or whatever had been used in connection with the residence to make a support for the family."—*Winter's Case*, 44 Tex. 597, 611, *supra*. There is significance in the statutory description of the homestead as embracing "the improvements and appurtenances," and no latitude of discretion in making the requisite selection can exclude these indispensable attingents.

As to the matter of contiguity, we may further observe, that where the selection is confined to *forties*, and is made from a *larger tract*, including no fractional subdivision less than such a *unit* of survey, so as to fall within the rule above declared, the selected homestead must embrace one solid and compact body of land, no one forty separated from the remainder, except, perhaps, by an intervening highway, or water-course.—Smyth on Homesteads, §138; *Prior v. Stone*, 70 Amer. Dec. 352, *note*. But it has been held, and in our opinion properly, that where the forties mutually touch only at a common corner, or right angle, they can not be regarded as contiguous within the proper meaning of the word. *Kresin v. Mony*, 15 Minn. 116. They must be adjacent, one to the other, for their full length, in order to constitute one compact body, as part of a lawful homestead.

[Jaffrey & Co. v. McGough.]

Mr. Thompson, in his treatise on Homesteads and Exemptions, marks "a growing disposition on the part of the courts, in determining what is to be included in the homestead, to take into consideration the legal subdivisions of land, such as public surveys and recorded town plats;" and he forcibly adds, that "a person, in laying off his homestead, will not be permitted to *gerrymander* through different public surveys, making a tract irregular and unusual in shape, in order to bring within it land of a peculiar value, when to do so will work a fraud on those who have innocently purchased from him."—Thompson on Homesteads, § 120. The doctrine announced is equally sound and just in its general application to the selection of homesteads, as to others than purchasers whose rights may be prejudiced.

An inspection of the remarkable diagram of the homestead attempted to be selected in this case—running, as its boundaries do, in a zig-zag direction, and shifting towards every possible point of the compass; shapeless in its capricious irregularity, and without apparent design except to take unjust advantage—a most casual inspection of it, we repeat, is the surest demonstration that such a thing can not be tolerated by the law. It stamps itself as a freak of unbridled discretion, arbitrary and capricous in character, unreasonable in mode, and unjust in consequence. It wrongs the adjacent owners, whose lands are disfigured in shape, and mutilated in their boundaries, and, if permitted, would establish a rule of law which would become the ready instrument of fraud and injustice. It would be a reproach to our jurisprudence, to recognize any principle which would allow it to stand, or which would tie the hands of a court of conscience so as to prevent its being effectively remedied. We perceive no reason, in this case, why the selection of the debtor's homestead should not be made with reference to the lines established by the Government survey.

The chancellor erred in refusing to set aside the selection as thus made. The case is not one where the question should be raised by exceptions to the report of the register under the rules of Chancery Practice. That officer only reported for the information of the chancellor what had been done by the debtor, McGough; and that act was a thing not countenanced by the law. It was not a matter upon which the register had any authority to make a ruling.

The decree is reversed, and the cause remanded.