## SPARKS v. DAY.

### Opinion delivered January 18, 1896.

URBAN HOMESTEAD—ARBITRARY SELECTION.—Where one entitled to a homestead in a part of his property situated within a town so selects it as almost to surround the residue of his property, completely shutting it off from any opening on the public street, to the injury of his creditors and without corresponding benefit to himself, such selection will be set aside.

Appeal from Cross Circuit Court.

JAMES E. RIDDICK, Judge.

*N. W. Norton*, for appellant.

The law gives the debtor the right to select his homestead. There is no evidence that the selection in this case was capricious. Exemption laws are liberally construed, and courts should stand by the letter of the law. In 7 So. 333 and 63 N. W. 632 the selection by the debtor was set aside for irregularity and as being arbitrary. The law intends to protect the home and appurtenances; and, where some meandering is necessary to include these, it should be allowed. 44 Tex. 597. Governmental lines need not be followed. 22 Wis. 150. Courts will allow a departure from the line of lots in order to save the outbuildings and means of communication with them.

*T. E. Hare*, for appellee.

The selection in this case was injurious to creditors, leaving the remainder of merely nominal value. The selection of a homestead must be governed by some rule including the home and *contiguous* lands. 22 Ark. 401; 31 *id.* 468; 47 *id.* 453; Smyth on Homesteads & Ex. sec. 138; 70 Am. Dec. 352, note; 15 Minn. 116. Gerrymandering is not allowed (7 So. 333), nor irregular and capricious shapes. The disposition is to follow public surveys. Thompson, Homesteads & Ex. sec. 120; 77 Ill. 500; 12 Kas. 260; 9 *id.* 453, 461; 10 *id.* 552.

WOOD, J. The appellant, Sparks, filed a schedule before the clerk of the circuit court, claiming his homestead, and selecting it by metes and bounds. It is situated in the town of Wynne, and is of a value that required the area to be reduced to one-quarter of an acre.

In selecting his quarter of an acre, he took, as a part of it, a walk two feet wide to his stable, and a walk two feet wide from the stable to the servants' house. The parcel left after he made his selection abutted on an alley, but nowhere on a street. The following plat shows the shape of the homestead selected, and the residue after the homestead was laid off :

The part claimed as a homestead and the residue all belonged to Sparks, and constituted the entire east half of block five in the town of Wynne. The description

of his homestead as contained in his schedule is as follows : "Commencing at the southwest corner of the east half of block five, thence east 96 feet, thence north 216 feet, thence west 96 feet, thence south 20 feet, thence east 20 feet, thence north 18 feet and 6 inches, thence east 58 feet, thence south 23 feet, thence east 17 feet and 6 inches, thence south 134 feet, thence west 20 feet, thence north 30 feet, thence west 12 feet, thence north 27 feet, thence west 50 feet, thence south 134 feet to point of beginning, all in the town of Wynne, Arkansas." The homestead, as thus selected, almost surrounds the residue, cutting it off from access to any street, and leaving only an outlet of sixty-two feet on an alley on the west side thereof. It was in proof that this manner of the selection and the peculiar shape in which it left the residue, making it inaccessible to the street, would make it of little value; that in this shape it would probably be worth one hundred and forty or fifty dollars, but that, if the homestead had been selected so as to give a street front to the remainder, it would be worth two or three times that amount, and would not reduce the value of the homestead. The appellant said that he would not have had much objection to laying off his homestead so as to give a street front of fifty-eight feet on the north to the parcel left, but preferred, if the law would allow him, to take it the way it had been designated.

The court below found that the homestead was "selected and laid off in an arbitrary, capricious and unreasonable shape, to the injury of plaintiffs, and without any corresponding benefit to the defendant," and declared such selection of no effect and void, and thereupon set aside and quashed the supersedeas, and gave leave to defendant to file another schedule. The appellant seeks to reverse the judgment.

The supreme court of Alabama, in *Jaffrey* v. *Mc-Gough*, 88 Ala. 648, uses this language, which applies to this case, and exactly expresses our views : "An inspection of the remarkable diagram of the homestead attempted to be selected in this case,—running, as its boundaries do, in a zigzag direction, and shifting towards every possible point of the compass; shapeless in its capricious irregularity, and without apparent design except to take unjust advantage—a most casual inspection of it, we repeat, is. the surest demonstration, that such a thing cannot he tolerated by the law." Mr. Thompson, in his work on Homesteads and Exemptions, says there is a "growing disposition on the part of the courts, in determining what is to be included in the homestead, to take into consideration the legal sub-divisions of land, such as public surveys and recorded town plats." Thompson, Homest. & Ex. sec. 120. And Mr. Waples, we think, announces the just and correct doctrine, when he says "that, in the absence of any statute prescribing the form of the homestead, courts ought never to permit a selection manifestly made in disregard of the rights of others ;" and he continues : "Creditors are interested in the parts of a tract which are not exempt ; and it never was the intent of the legislature to cut them off from their remedy against non-exempt property, while protecting a limited quantity as a homestead. While the confinement of a homestead to the regular shape of  *  *  *  city lots is not a rule, because not everywhere practicable, it may be laid down as a rule that one authorized to select, declare, and record a homestead with a quantitative limitation cannot be permitted to carve it out of his land in such form as to leave the remainder worthless, or to impair its value, so that creditors shall be injured." And we add, es-

pecially would that be the case where it is shown, as here, that the meandering was of no benefit to the homestead claimant. Waples, Homest. & Ex. pp. 158, 160.

It follows that the judgment of the lower court is correct, and must be affirmed. So ordered.