## ELLIOTT v. BOND.

No. 9123—Opinion Filed Nov. 19, 1918.

Rehearing Denied Feb. 11, 1919.

(176 Pac. 242, 991.)

(Syllabus.)

1. **Homestead — Different Tracts — Selection—Constitutional and Statutory Provisions.**

Where a person owns more than 160 acres of land, not within a city, town, or village, and the home of the family of the owner is on some portion of the land 160 acres of such land is impressed with the homestead character, and the selection of the special 160 acres from the larger tract of land, as the homestead of the family, may be made by the owner at any time the necessity for making such selection may arise, provided such selection includes the residence, or home of the family, and is not manifestly made in disregard of the rights of others; and this is true, under section 1, art. 12, of the Constitution of this state, and the statutes adopted in accordance therewith, whether the land be in one or more parcels.

2. **Homestead—Abandonment—Intent.**

Abandonment of a homestead is a question of fact in which the intent of the parties in leaving it is controlling.

3. **Same.**

The question as to whether an abandonment of a homestead has taken place or not must be determined by the peculiar facts and circumstances of each case.

4. **Same—Continuance of Homestead Character—Intent.**

When a homestead character once attaches to property, it will continue to be the homestead until the owner voluntarily changes its character by going away from it, with the family, with the fixed and definite intention of not returning and occupying it as a home or forms such fixed and definite intention after leaving it.

5. **Same—Abandonment—Intention.**

A contract by the owner of lands, in which are embraced the homestead of his family, to sell such lands upon condition that the person with whom the contracts perform certain obligations thereunder, is contingent upon performance and does not show a fixed and definite intention to abandon the homestead, but a possible intention to abandon it in case a sale is made; and this may be true even though the owner of the land and the family which had previously occupied the land as their home are in the act of moving away from it at the time the contract is made.

6. **Same—Sufficiency of Evidence.**

Abandonment of a homestead must be established by clear, convincing, and conclusive proof.

7. **Appeal and Error—Equity Case—Sufficiency of Evidence.**

In an equity proceeding this court will weigh the evidence, but the findings and judgment of the trial court will not be disturbed if evidence was produced in that court reasonably tending to support the same, and if such findings and judgment are not against the clear weight of the evidence.

8. **Homestead — Husband's Agreement to Sell—Validity—Enforcement.**

A verbal agreement entered into by a married man for the sale of the homestead of the family, made without the consent of the wife though accompanied by partial performance on the part of the intended pur-

chaser, is void, and will not be enforced in an action for specific performance brought by such purchaser.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Equitable suit by W. M. Elliott against J. R. Bond. Judgment for defendant conditionally, and plaintiff brings error. Affirmed.

Robt. Wimbish, W. C. Duncan, and J. F. McKeel, for plaintiff in error.

W. F. Schulte, for defendant in error.

TISINGER, J. This was an action in the nature of an equitable suit brought by W. M. Elliott, plaintiff in the trial court, to obtain the specific performance of a verbal contract of a sale of land made to him by J. R. Bond, defendant in that court. The plaintiff alleged that in March, 1915, the defendant sold the land to him by verbal contract, and that the consideration for the sale was an agreement on the part of the plaintiff to pay certain debts of the defendant and to assume the payment of one certain debt secured by a mortgage on the land.

In pursuance of the contract, plaintiff alleged that, with the knowledge and consent of the defendant, he, in good faith, took possession of the land at the time the contract was made; that he had made valuable permanent improvements thereon, collected the rents therefor, and was in possession thereof at the time suit was brought. He further alleged that he had paid the defendant all he had agreed to pay, including accrued interest on the mortgage indebtedness which he had assumed.

The defendant resisted the action upon three grounds:

(1) That the debts he owed and which plaintiff agreed to pay were to have been paid in April, 1915, and that plaintiff had not paid them at that time.

(2) That the verbal agreement for the sale of his land was in a violation of the statute of frauds.

(3) That the land was the homestead of the family, consisting of himself, his wife, and seven minor children; that the homestead had not been abandoned, but that the family had left it temporarily for the purpose of improving the health of two of the children who were ill; and that his wife had not joined in the contract of sale of the land and refused to join in a conveyance thereof.

Considerable testimony was taken relative to these issues, and, upon final hearing of the cause, the court made findings in favor of the defendant's contention that 160 acres of the land was the homestead of the family and that it had not been abandoned. Judgment was accordingly rendered denying plaintiff the relief sought, conditioned, however, upon payment by defendant into court, for the use of plaintiff, of the amount of the debts of the defendant which plaintiff had paid, with interest on each payment from the time it was made less the amount of rents which plaintiff had collected.

No exception was taken by the defendant to the judgment of the court, which, by the conditions attached thereto, virtually impressed the homestead found to exist with a lien to secure the payment of certain of his debts which the plaintiff had paid, nor has he instituted any proceedings in this court questioning the correctness of such judgment To all intents and purposes he has accepted the judgment rendered, with the condition thereto attached, and by his acceptance has manifested a purpose to comply with these conditions.

He has not objected to the judgment, nor called it in question by cross-petition in error, or otherwise. The question, therefore, of the soundness and correctness of the judgment of the trial court, with respect to the conditions imposed by that judgment upon the defendant, is not before this court and is not determined by this decision.

The findings and judgment of the court are attacked by plaintiff's petition in error, and, to reverse the same, he has perfected this appeal.

The defendant was the owner of 180 acres of land in one body in Pontotoc county. He and his family had lived on this land for several years. It was the place of residence, the home of the famly, and was known as the "home place" to distinguish it from 80 acres in the same county also owned by the defendant, but not adjoining the 180 acres.

Defendant and his family resided on this 180 acres continuously for several years before moving to the state of Texas in March, 1915, with the exception of a short time during the summer of 1914, when they temporarily occupied a house on the 80 acres owned by him, in order that a tenant who had rented a portion, or all of the 180 acres might have the home. Except that the home of defendant and his family was on the 180 acres, defendant had never designated or selected the family homestead.

So, at the very outset of the case, we are

confronted with the proposition that inasmuch as the defendant owned more than 160 acres of land, if he desired to impress any part of it with the character of a homestead, he should have selected it as such, as required by the Constitution of the state and the statute adopted in accordance therewith.

While the beneficent protection of our Constitution is extended only to such property as is homestead, it does not determine how the homestead shall be selected. Nor have we any statute which prescribed how the selection shall be made. Section 1, art. 12, of the Constitution provides that—

"The homestead of any family in this state, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels to be selected by the owner."

The statute, section 3343, Revised Laws 1910, is identical with this constitutional provision. Neither the Constitution nor the statute makes provision for such a contingency as arises here, where the property occupied and used as a home consists of more than the maximum number of acres allowed by law, and where there is also another separate parcel that might, under the law, be selected by the owner.

But the 180 acres in one body, owned by the defendant, had been occupied and used by him and his family as their home ever since he acquired title to it, with the exception of the short time they temporarily occupied another house in a separate parcel of land also owned by him. This occupancy and use was sufficient to impress 160 of the 180 acres with the homestead character. And, in the absence of any statute to the contrary, he, as owner, had the right to select 160 of the 180 acres, so impressed with the homestead character, as the homestead of his family, whenever the necessity for making such selection might arise, provided such selection included the residence or home of the family and was not manifestly made in disregard of the rights of others. Jaffrey v. McGough, 88 Ala. 648, 7 South. 333; Sparks v. Day, 61 Ark. 570, 33 S. W. 1073, 54 Am. St. Rep. 279.

The defendant testified at the trial as to the specific 160 acres which he regarded as the homestead of his family, and, if no selection had been made by him before the trial, he could have made it then, under the limitations above set out, provided there had been no forfeiture or abandonment of it as a homestead. Tumlinson v. Swinney, 22 Ark. 400 76 Am. Dec. 432.

It is claimed by plaintiff that the defendant abandoned the land as a homestead, at the time he verbally agreed to sell it and plaintiff agreed to buy it on March 5, 1915; and that this verbal agreement, coupled with the subsequent removal of the family and the family possessions to the state of Texas, where the defendant engaged in farming, sent his children to the public schools, borrowed money from the banks, etc., was evidence of his intention to abandon it.

As to the matter of the abandonment of a homestead, no general rule of universal application can be enunciated and the question whether an abandonment has taken place must depend upon and be determined by the peculiar facts and circumstances of each case. Thompson, Homestead and Exemption, § 273 et seq.

The testimony in the case tends to prove that the defendant, acting on the advice of his family physician, moved his family to the plains of West Texas for the purpose of improving the health of some of his children who were ill. He confidently expected the change to benefit his children, and at the time he moved left a portion of his personal property on the farm, or in the possession of a neighbor, with direction to this neighbor to keep all of it for him until he returned. The greater portions of his household effects and other chattels were loaded on a car ready to be transported by rail to their destination, and his wife and the other members of his family were still in the county, either at their home, or at the home of some neighbor, when he made the verbal agreement with plaintiff to sell him the land. It is admitted by the defendant that this agreement was made, the only difference in their testimony with respect to the terms of the agreement being as follows: Defendant testified that plaintiff was to pay off during the month of April, after the agreement was made in March, a certain note he owed the bank, and thus release o span of mules which were mortgaged to secure it, so as to enable him to use the mules as security for money or supplies in Texas, and that plaintiff was not to have possession of the land until this was done; while the plaintiff testified that he was to have immediate possession of the land, and that the note to the bank was not to be paid by him until it became due some time in the following fall. This note was not paid by plaintiff until after it became due the following October.

The interest on the indebtedness secured

by mortgage on the land, which became due the following November, after the verbal agreement was made between plaintiff and defendant in March, was paid by the defendant. Plaintiff undertook to pay it by having a check sent to the company which held the loan, but the check was returned, with the statement that it already had been paid by the defendant.

The testimony further tends to prove that the defendant never established a permanent home for his family in the state of Texas. For some time he lived there with his family in a tent. At the time of the trial in December, 1916, he had been in the state less than two years, occupying land as a tenant farmer in two different counties, and had conditionally contracted to rent and cultivate land for the third year; but it was understood by his then landlord from conversations he had with him that he was residing there only temporarily and intended to return to Oklahoma. The suit was filed and he was served with summons in December after the agreement was made in March, and the reason why the defendant did not sooner return to Oklahoma was because plaintiff was in possession of the land and had begun the suit against him.

At the time the verbal agreement between plaintiff and defendant was made defendant's wife was not consulted in regard to it and knew nothing about it. Subsequently, some six or seven months afterwards, she informed plaintiff that she would not sign a deed conveying the land.

The plaintiff took possession of the land, collected the rents, and paid the taxes against it, but made no permanent improvements on it.

The contention of the plaintiff that defendant's verbal agreement to sell the land, coupled with his removal and the removal of his family and most of his personal effects to the state of Texas, evidenced a fixed and definite intention to abandon the homestead, is not sound for the reason, among others, that the agreement was a conditional one, and the plaintiff failed to perform the condition required of him according to its terms. The defendant testified that his indebtedness to the bank, secured by a mortgage on his team, was to have been paid by the plaintiff during the month of April after the agreement was made in March, and that he made the agreement to this effect because he desired to use the team in Texas as security to obtain necessary credit for the support of his family. And he is supported in this

regard by the testimony of an officer of the bank who testified that the plaintiff came into the bank some time during March or April, 1915, inquired as to the amount of the defendant's note, and, on being told the amount of it, stated that he would return directly and pay it off, and that the defendant desired it paid off, the mortgage on his mules, released, and the release sent to him so that he could buy supplies. The amount of this note to the bank was the largest single obligation of the defendant which the plaintiff was to presently pay, and it was not paid by him until sometime after it was due on October 1, 1915.

So, the intention that existed in the mind of the defendant at the time he made the contract with the plaintiff was contingent on performance of the plaintiff of its terms. The defendant agreed to sell provided the plaintiff would pay at the time and in the manner specified in the contract. Pending performance on plaintiff's part, defendant and his family moved away.

As the contract was contingent on performance on the part of the plaintiff of his obligations thereunder, we may readily conclude that, whatever intention as to an abandonment of the homestead existed in the mind of the defendant at the time it was made, it was not a fixed, definite, and abiding intention to abandon, but a possible intention to abandon provided a sale was made.

The land had already been rented by the defendant, and, according to his testimony, under the terms of the contract, plaintiff was not to have possession of the premises, or collect the rents until he had fully performed his obligations thereunder. Leaving a homestead with intent to abandon it if sale can be made is not an abandonment. Cox v. Harvey, 1 Posey, Unrep. Cas. (Tex.) 268, 273; Gouhenant v. Cockrell, 20 Tex. 96, 99; Newton v. Calhoun, 68 Tex. 451, 458 4 S. W. 645; Sanders v. Sheran, 66 Tex. 655, 2 S. W. 804.

Along the same general line with the foregoing conclusion, the following acts have been held not to show an abandonment: A publicly declared intention to move away and sell, Dunn v. Tozer, 10 Cal. 167; a willingness to convey, followed by a removal, Woolcut v. Lerdell, 78 Iowa, 668, 43 N. W. 609; an offer to sell by an owner temporarily residing away from the home premises, Aultman v. Allen, 12 Tex. Civ. App. 227 33 S. W. 679; an unexecuted intention to sell and reinvest the proceeds in an-

other home, Wike v. Garner, 179 Ill. 257, 53 N. E. 613, 70 Am. St. Rep. 102. See, also, German State Bank v. Ptachek, 67 Okla. 176, 169 Pac. 1094.

And in the case of McCammon v. Jenkins, 44 Okla. 612, 145 Pac. 1163, Mr. Commissioner Thacker, afterwards Mr. Justice Thacker, speaking of the court said:

"When a homstead character once attaches to property, it will continue to be the homestead until abandoned by a going away therefrom with the definite intention never to return. 21 Cyc. 579; Sykes v. Speer (Tex. Civ. App.) 112 S. W. 426: In re Presnall (D. C.) 167 Fed. 406.

"And an intent never to return if the occupants going away from it can realize their desires and expectations elsewhere, and thereupon sell their homestead, being conditional, is not sufficient."

The defendant testified that at the time he moved to Texas he left on the farm in controversy a bedstead, a couple of stoves, a box of school books, a double shovel and planter, a hay baler, several plow stocks, and a hog belonging to his wife; and that he did not try to dispose of them because he thought he might need them when he came back. And a strong circumstance corroborating his evidence as to his intention to return is the fact that he paid the accrued interest on the debt secured by a mortgage on the land, which, if the agreement made between him and plaintiff had been carried out, plaintiff should have paid.

The letter written by the defendant to plaintiff on November 10, 1915, in which he directed plaintiff to take his notes and place them with the bank he had been accustomed to deal with and send a deed for him to sign, does not alter our conclusion, for the reason that it nowhere appears that the plaintiff followed these directions. He did write a letter in which he stated that one Cummings had the notes and requested the defendant to sign a deed which was inclosed. This the defendant refused to do; and his refusal to sign the deed is additional corroboration of his testimony that he had not abandoned the land as a homestead, but intended to return to it.

There was evidence here sufficient to authorize the court to find, as it did find that the defendant had not abandoned the homestead. In its findings the court said:

"It is true there is evidence pointing toward abandonment and there is evidence contradicting that idea."

But basing its findings and judgment on the well-recognized rules of law that abandonment is a question of fact in which the intention of the parties in leaving the homestead is controlling, and that it must be established by clear, conclusive, and undeniable evidence, the court reached the conclusion that there had been no abandonment of the homestead in this case. We feel that we would not be justified in disturbing this finding and the judgment rendered thereon.

This case is one of purely equitable cognizance and was properly tried to the court. The court saw and heard the witnesses and had opportunity to "measure the men." Under such circumstances, even though the evidence is conflicting, and might have authorized the finding in favor of either party, unless this court can say that the findings and judgment of the trial court were against the clear weight of the evidence, they should be upheld. Bank v. Earl, 2 Okla. 617, 39 Pac. 391; Light v. Bank, 2 Okla. 543, 37 Pac. 1075; Smith v. Skelton, 63 Okla. 116, 163 Pac. 268; Thomas v. Halsell, 63 Okla. 203, 164 Pac. 458; Dandridge v. Dandridge, 59 Okla. 146, 158 Pac. 445; Crump v. Lanham, 67 Okla. 33, 168 Pac. 43.

For the reasons herein stated, this cause is affirmed.

All the Justices concur.

On Petition for Rehearing.

SHARP, J. The trial court having upon sufficient evidence found that 160 acres of the land, the subject of the controversy, was the homestead of the Bond family and that their removal from the state was temporary only, in consideration of the petition for rehearing it is necessary only to determine what effect should be given the verbal contract or agreement of Bond in respect to the sale thereof. Plaintiff's action, which was for specific performance, was brought against J. R. Bond alone. The petition charges "that on or about March 1, 1915, the defendant entered into a verbal contract with the plaintiff, by the terms of which defendant sold and agreed to convey to plaintiff by good and sufficient warranty deed" the 180 acres of land, including therein the land subsequently held to constitute the homestead of Bond and family. It is not charged that the wife was a party to the "verbal contract" nor is it shown that she had knowledge thereof until some six months afterwards, at which time she declined to join in the execution of a deed to the lands. Article 12, § 2, of the Constitution, provides that the owner of the homestead, if married, may not

sell it without the consent of his spouse, given in such manner as may be described by law. So that whatever may have been the purpose of Bond respecting the sale, or the terms or conditions thereof, the land constituting the homestead could not be sold, or a binding contract made in respect thereto, without the consent of his wife. Had Bond executed a warranty deed to the homestead portion of the lands and his wife refused to join therein, the conveyance would, because of the constitutional inhibition, have been void. Much less is a verbal contract of sale, even though unconditional, executed on the part of the husband alone, an agreement capable of enforcement in the courts even though the intended purchaser has entered into possession of the premises and paid a portion of the purchase price. The right of the husband to execute a deed to the homestead, given without the wife's consent in the manner prescribed by law, as provided in article 12, § 2, of the Constitution was before the court in Whelan v. Adams, 44 Okla. 696. 145 Pac. 1158, L. R. A. 1915D, 551, wherein it was held that any attempted conveyance by deed of the homestead of the family by a married man, given without the wife's consent in the manner prescribed by law, was void; that where the relation of husband and wife exists the deed of the former to the homestead of the family conveys no title, and this notwithstanding the fact that the husband and wife be living separate and apart, or even though the wife may have, without justifiable cause, abandoned the husband. In the body of the opinion, it was said:

"No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution."

The homestead contemplated and provided for by our Constitution (sections 1 and 2, art. 12) is the homestead of the family, not of the husband alone, though the title be in his name; and in order to make a valid contract for its sale, the wife must consent thereto in such manner as may be prescribed by law. This was not done; indeed, the wife is not a party to the action, nor is it claimed that she joined in or consented to the agreement to convey. Of course, if the land were not the homestead, or, though once a homestead it had been abandoned, another situation would be presented.

The petition for rehearing is denied.

All the Justices concur, except HARRISON, J., not participating.