**In re Huey P. (Mio) GREY, Ann P. (Mio) Grey, Debtors.**

**Bankruptcy No. 82–40386.**

United States Bankruptcy Court, D. Kansas.

Sept. 25, 1984.

Dan E. Turner, Topeka, Kan., for debtors.

Dale L. Somers, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for Coats State Bank.

Beau Williams, Topeka, Kan., Trustee.

## MEMORANDUM

JAMES A. PUSATERI, Bankruptcy Judge.

This is a proceeding in which the Coats State Bank objects to the debtors' repeated attempts to change their claimed homestead exemption in order to include property that subsequent to filing they have discovered to be most valuable.

The Coats State Bank is represented by Dale L. Somers of Eidson, Lewis, Porter & Haynes, Topeka, Kansas, and the debtors are represented by Dan E. Turner, Topeka, Kansas. Also appearing are the debtors, Huey P. and Ann P. Grey, and the trustee, Beau Williams, Topeka, Kansas.

## FINDINGS OF FACT

At the hearing on this matter, the debtors presented the following plat of the land they wish to exempt:

southeast corner of the southwest quarter section

---

The tract is outside any city limits, contains 160 acres and partitioned out of the rest of the land owned by the debtors. It includes one irrigated circle (the octagon at right of the diagram), a corridor apparently about 150 feet wide and 1,500 feet long through which runs the irrigation system, and a rectangular tract approximately 1,500 feet by 523 feet containing the debtors' home. The boundary of the tract is further complicated by rectangular parcels jutting off the octagon and the irrigation corridor. Debtors, after their bankruptcy filing, have drilled five oil wells. At the hearing the debtor, Huey Grey, stated that he is sure that two of the wells are within the claimed homestead parcel, and as for the other three, if they aren't included, "they are real close."

Shortly after the hearing, debtors submitted the following diagram accompanying a "corrected survey report":

The reason which necessitated the correction is not stated. The configuration of the property has changed only slightly and now excludes part of the irrigation circle while including more corner area.

## CONCLUSIONS OF LAW

■ The law of Kansas is that in order to qualify as a homestead, the land must contain the debtors' residence. *Peak v. Bank*, 58 Kan. 485, 489, 49 P. 613 (1897). Separate parcels may comprise the homestead, but only if the parcels are contiguous and therefore comprise a single tract or body of land. *Randal v. Elder*, 12 Kan. 257, Syl. ¶¶ 1, 3 (1873). Parcels are not contiguous if they merely corner on each other. *Linn County Bank v. Hopkins*, 47 Kan. 580, 582, 28 P. 606 (1892).

No reported Kansas case has considered the problem of a homestead exemption claim which consists of tracts which are contiguous but form a parcel of highly irregular shape. The only pronouncement of a Kansas appellate court that gives any guidance in such a situation is contained in the case of *Lenora State Bank v. Peak*, 3 Kan.App. 698, 44 P. 900 (1896). In holding that a farmer was not entitled to his claimed homestead exemption because it did not include his residence, the court noted that the selection of homestead "must ... be made in a reasonable manner; and regard should ordinarily be had for recognized subdivisions of sections, so that the value of the remaining lands be not unreasonably affected." 3 Kan.App. at 702, 44 P. 900, citing *Railroad Co. v. Winter*, 44 Tex. 597, 611 (1876); *Todd v. Gordy*, 28 La.Ann. 666, 666 (1876). The Kansas Supreme Court reversed the final result in that case, holding that under the special circumstances presented, the debtor ought to be given a chance to reselect his homestead exemption in such a way that his residence and the desired farm land would be in contiguous parcels. *Peak v. Bank*, 58 Kan. 485, 49 P. 613 (1897). The following diagram shows the sort of tract that the Kansas Supreme Court said would be reasonable. 58 Kan. at 490, 49 P. 613. Note that it is a far cry from the oddly shaped tract suggested by the debtor in this case.

tract debtor desired to retain

tract suggested by court

The Supreme Court's suggestion does not follow "recognized subdivisions of sections," if by this the Court of Appeals was referring to quarter sections (160-acre tracts). The parcels the Supreme Court suggested, however, are 40-acre tracts, in themselves parcels of considerable size and which leave for the disposition of creditors lands of reasonable shape and useful dimension. Consequently the Supreme Court's opinion is not inconsistent with the rule announced by the Court of Appeals against unreasonably affecting the value of the remaining lands. No Kansas case indicates that a contrary rule is the law of this state.

Oddly shaped homesteads have been proposed in jurisdictions other than Kansas. The touchstone in nearly every decision has been the right of creditors and other third parties not to have their interest impaired by the debtor's reservation of the most valuable pieces of land for himself through creation of oddly shaped tracts.

*Hanchett v. McQueen,* 32 Mich. 22 (1875) involved a homestead described by the Michigan Supreme Court as follows: "seventy-five feet square in the center of the block, with a strip sixteen feet wide run-ning out to the street on one side of the block. This parcel cut considerable portions out of four lots, and greatly damaged them." The court denied the homestead exemption on other grounds, but expressed stern disapproval of the selection of the homestead exemption, noting that "[t]he house was so situated that it greatly impaired the value of several of the lots as separate parcels, and the location of the enclosure was still more injurious." 32 Mich. at 25–26.

In *Sparks v. Day,* 61 Ark. 570, 33 S.W. 1073 (1896), the homestead claimed was roughly the south half of a city block with a two-foot wide walk to the stable located in the northeast corner of the block and another two-foot wide walk to the servant's house located in the northwest corner of the block. The parcel remaining after the homestead claim was laid off had no access to any street, only access to the alley. The diagram accompanying the case is reproduced below.

In declaring that the selection was null and void, the Arkansas Supreme Court quoted a treatise writer, Waples, with approval:

Creditors are interested in the parts of a tract which are not exempt; and it never was the intent of the legislature to cut them off from this remedy against nonexempt property, while protecting a limited quantity as a homestead. While

the confinement of a homestead to the regular shape of * * * city lots is not a rule, because not everywhere practicable, it may be laid down as a rule that one authorized to select, declare, and record a homestead with a quantitative limitation cannot be permitted to carve it out of his land in such form as to leave the remainder worthless, or to impair its value, so that creditors shall be impaired.

The Alabama Supreme Court in *Jaffrey (et al.) v. McGough*, 88 Ala. 648, 7 So. 333 (1890) described a homestead claim brought before it as follows:

> In the selection of his homestead the appellee did not select the lands immediately contiguous to his dwelling, but selected the amount in a very zigzag manner, having no regularity in the selection, and making a very remarkable plat of land.

Regarding the limits on the debtor's discretion to select his homestead, the court stated:

> A homestead, if we could suppose such a case, fenced in the shape of an animal, a bird, a flower garden, or other fantastic shape, would not cease to be exempt from execution on this account, provided it be of lawful area and value, and the entire tract owned was in this particular form; although it is manifest that a selection in these quaint forms, made from a larger tract of land, would be unreasonable and capricious, and not allowable.

The court was aware of a debtor's understandable desire to select the most valuable parcel as his homestead. In this connection, it noted:

> It may be urged that a selection by contiguous 40's would often operate unjustly in compelling the selection by a debtor, a widow, or a guardian of land of inferior quality and insignificant value, and thus prevent the equal distribution of the more valuable lands. This is no doubt true. But the main object in view is the dwelling house; a place of shelter and residence for the debtor; a home for the widow and children. As observed in

a recent case by the supreme court of Texas, answering such a suggestion: "The object of the constitution was not to protect the home with 200 acres of the most valuable land that might be in a large tract, but to protect the house and the farm, tan-yard, mill, gin, or whatever had been used in connection with the residence, to make a support for the family." *Winter's* Case, 44 Tex. 597, 611, supra.

Then the court quoted *Thompson on Homesteads and Exemptions:*

> "a person in laying off his homestead, will not be permitted to gerrymander through different public surveys, making a tract irregular and unusual in shape, in order to bring within it land of a peculiar value, when to do so will work a fraud on those who have innocently purchased from him." Thomp.Homest. & Ex. § 120.

In holding that the selection proposed to it was improper, the court concluded:

> An inspection of the remarkable diagram of the homestead attempted to be selected in this case,—running, as its boundaries do, in a zigzag direction, and shifting towards every possible point of the compass, shapeless in its capricious irregularity, and without apparent design except to take unjust advantage,—a most casual inspection of it, we repeat, is the surest demonstration that such a thing cannot be tolerated by the law. It stamps itself as a freak of unbridled discretion, arbitrary and capricious in character, unreasonable in mode, and unjust in consequence. It wrongs the adjacent owners, whose lands are disfigured in shape and mutilated in their boundaries, and, if permitted, would establish a rule of law which would become the ready instrument of fraud and injustice. It would be a reproach to our jurisprudence to recognize any principle which would allow it to stand, or which would tie the hands of a court of conscience so as to prevent its being effectively remedied.

Albeit in dicta, the Florida Supreme Court has stated:

"It may be that in a case where a man resides with his family upon a very large farm, and is called upon to select his homestead that the remainder may be subjected to his debts, he would be restrained by a rule requiring a reasonable exercise of the right from selecting his homestead in narrow strips of land running through the entire tract in fanciful, queer, whimsical contortions, making a grotesque figure, but there is no reason why the owner of a homestead which lies in a compact unusual body may not sell such parts of it as he may desire and retain the remainder for his homestead ..." *Shone v. Bellmore,* 75 Fla. 515, 78 So. 605, 608 (1918).

Also in dicta, the Nebraska Supreme Court stated that "a homestead claimant will not be permitted to lay off or select the homestead in an arbitrary, capricious or unreasonable shape, so as to occasion loss or damage." *In Re Thomas' Estate,* 178 Neb. 578, 134 N.W.2d 237, 242 (1965).

The Wisconsin Supreme Court foresaw the irregular shape problem when in *Kent v. Agard and Others,* 22 Wis. 150 (1867) it stated: "[t]here can be no doubt that ... it was the design of the statute to allow [an owner of a homestead right] to select, without regard to the government survey, any forty acres, in *reasonable shape,* that would include his dwelling." 22 Wis. at 152 (emphasis added).

The Oklahoma Supreme Court kept the rights of creditors in mind when it stated that the owner had the right to select 160 acres of his land as a homestead, "provided such selection included the residence or home of the family and was not manifestly made in disregard of the rights of others." *Elliot v. Bond,* 72 Okla. 3, 176 P. 242, 243 (1918), citing *Jaffrey (et al) v. McGough,* 88 Ala. 648, 7 So. 333 (1890); *Sparks v. Day,* 61 Ark. 570, 33 S.W. 1073 (1896).

■ The parcel selected by the debtors in this case is not a permissible homestead exemption in Kansas under the rule of the *Peak* cases. The dimensions on the survey map provided by the debtors show that the eastern portion of the tract is an irrigated circle with a diameter of approximately one-half mile, containing approximately 130 acres. The strips of land comprising the remainder of the debtors' requested exemption total 30 acres, more or less. Such a small area fashioned into two narrow rectangles is not the sort of parcel that was approved by the Supreme Court in *Peak.* It is clear that the value of the remaining lands would be "unreasonably affected" by the proposed partition. The four corners lying just outside the irrigated octagon are dry land and furthermore too small for productive use. Similarly, the areas north and south of the irrigation corridor and those tucked away in the corners created by the perimeter of the proposed tract would be of little or no value to a farmer other than the debtor because of their size and the fact that they are partially enclosed by the debtors' parcel. The debtors have apparently made an effort to draw their exemption claim so as to retain the most valuable portions of their property, including the residence and its appurtenances, the irrigation well and lines, the irrigated land, and some if not all of the oil wells. It is clearly the debtors' intention to leave only the least valuable land to the disposition of their creditors.

The proposed parcel is of the same sort as the parcels which have been held to be improper homestead exemptions in Michigan, Arkansas and Alabama. If the claimed homestead exemption were allowed, the creditors in this case would be damaged because the value of the remaining land would be greatly impaired. Therefore, it is the opinion of this Court that the correct interpretation of Kansas homestead exemption law is that the exemption claimed by the debtor cannot be allowed.