## WAT-TAH-NOH-ZHE et al. v. MOORE.

### No. 2466.    Opinion Filed January 7, 1913.

#### (129 Pac. 877.)

1. **APPEAL AND ERROR** — Judgment — Modification. Plaintiffs prayed, in the second count of their petition, for the cancellation of a certain lease. Defendant admitted the same was void, and also asked to have the same canceled. The court, through oversight, or other reason, failed to grant the relief prayed for. **Held,** that on appeal on the first cause of action, the entire record being presented to this court, and the aforesaid error being urged by plaintiffs in error and not opposed by defendant in error, plaintiffs in error are entitled to a cancellation, and this court will order the same canceled.

2. **EQUITY**—Questions of Fact—Submission to Jury. In cases of equitable cognizance the judge may call a jury, or consent to one, for the purpose of advising him on questions of fact, and he may adopt or reject their conclusions, as he sees fit, for that the whole matter must eventually be left to him to determine; and instructions offered by the parties furnish no ground of error on appeal. It is not only the right, but the duty, of the court, in such cases, to finally determine all questions of fact as well as of law. **Barnes v. Lynch et al.,** 9 Okla. 191, 59 Pac. 1008.

3. **JURY**—Trial by Jury—Issues of Fact. All issues of fact arising in actions for the recovery of money, or for the recovery of specific real or personal property, shall be tried by a jury, unless a jury is waived or a reference ordered. All other issues shall be tried by the court, subject to its power to submit the issues to a jury or direct a reference.

4. **APPEAL AND ERROR**—Review—Findings by Court—Conclusiveness. Where a cause is tried to the court, without the intervention of a jury, the court's findings of fact will be given the same weight as the verdict of a jury, and will not be set aside if there is any evidence reasonably tending to support it.

5. **INDIANS**—Indian Lands—Mining Lease—Assignment of Royalty —Statutes—"Alienation." An assignment of royalty due under a mining lease given by a Quapaw Indian on his allotment is not an "alienation" of a part of the real estate, in violation of the Act of March 2, 1895, c. 188, sec. 1, 28 St. at L. 907, making such allotments inalienable for 25 years.

(Syllabus by Robertson, C.)

*Error from District Court, Ottawa County;*
*T. L. Brown, Judge.*

Action by Wat-tah-noh-zhe and Francis Q. Goodeagle against James K. Moore to cancel a contract for the assignment of roy-

alty, and to cancel a mining lease, etc. Judgment for defendant, and plaintiffs bring error. Corrected and affirmed.

*J. J. Bulger,* for plaintiffs in error.

*W. H. Kornegay,* for defendant in error.

Opinion by ROBERTSON, C.   Wat-tah-noh-zhe is a full-blood Quapaw Indian, and the allottee of the land described in the record, under the provisions of the Act of Congress, approved March 2, 1895, c. 188, sec. 1, 28 St. at L. 907.   Francis Q. Good-eagle, also a full-blood Quapaw Indian, is her husband.   On June 7, 1897 (Act June 7, 1897, c. 3, p. 1, 30 St. at L. 72), Congress enacted a law providing:

"That the allottees of land within the limits of the Quapaw agency, Indian Territory, are hereby authorized to lease their lands, or any part thereof, for a term not exceeding three years, for farming or grazing purposes, or ten years for mining or business purposes.   And said allottees and their lessees and tenants shall have the right to employ such assistants, laborers and help from time to time as they may deem necessary:   Provided, that whenever it shall be made to appear to the Secretary of the Interior that, by reason of age or disability, any such allottee cannot improve or manage his allotment properly and with benefit to himself, the same may be leased in the discretion of the Secretary, upon such terms and conditions as shall be prescribed by him.   All acts and parts of acts inconsistent with this are hereby repealed."

Neither of these plaintiffs in error come within the proviso of the foregoing section as to age or other incapacity or disability.   Prior to the 18th day of July, 1897, but subsequent to the passage of the foregoing statute authorizing the leasing of the land, these plaintiffs in error made and entered into a ten-year mining lease for a portion of their land to James F. Robinson and C. M. Harvey, and of the balance to the Baxter Royalty Company, all of whom agreed to pay them 5 per cent. royalty on all mineral taken from said land during the life of said lease.   On July 18, 1907, they entered into a written contract with one James K. Moore, whereby, for and in consideration of $1,000 in cash, they sold to said Moore an undivided one-half interest in and

to the royalties which may be due them under the aforesaid mining leases. It also appears from the record that on August 7, 1908, plaintiffs in·error made and entered into a written contract, whereby they leased to said Moore the E. ½ of the S. W. ¼ and the W. ½ of the S. E. ¼ and the S. E. ¼ of the S. E. ¼, all of section 1, township 28 N., range 22 E., of the Indian meridian in Ottawa county, for mining purposes, which lease, however, does not begin to run until June 14, 1917; the grantees agreeing in said lease to pay grantors 5 per cent. royalty on all minerals taken from said land.

On July 7, 1909, plaintiffs in error commenced an action in the district court of Ottawa county,. the object of which was to cancel, set aside, and hold for naught both the assignment of royalty and the mining lease last above described, on the ground of fraud and deceit on the part of said James K. Moore in securing their execution. Defendant answered by general denial, and on the issues thus formed the cause was tried to the court before a jury, which the court called to advise him as to the disputed facts in the case. After the evidence was all in, the defendant moved for a peremptory instruction in his behalf, which motion was, by the court, sustained, and a directed verdict was returned by the jury, finding the issues in favor of defendant, on which verdict judgment was duly entered. Motion for new trial was filed, presented, and overruled, and plaintiffs in error appeal.

Before considering the assignments of error raised in the petition in error, of and concerning the assignment of royalty and the direction of the verdict, it may be noted that prior to the trial and on April 11, 1910, the defendant filed the following motion, to wit:

"James K. Moore, defendant, says that he is advised that the lease mentioned in the second paragraph of the petition as being made by plaintiffs to defendant, beginning June 14, 1917, is void as against the ten-year limitation for the making of leases, and he asks that judgment be rendered accordingly. James K. Moore, by W. H. Kornegay, Atty."

This motion, for reasons not appearing in the record, was not passed upon by the court; nor was any order or judgment

made or entered concerning said second cause of action, although the issue therein was pending properly before the court at the time. This lease, for reasons deemed sufficient by defendant, and which will not be inquired into at this time by us, should have been canceled by the court, and such failure on the part of the court was error; and the judgment herein, so far as the second cause of action in plaintiffs' petition is concerned, should be amended and enlarged so as to show the said lease to be null and void, and canceled of record.

As to the other phase of the case, plaintiffs in error rely on two points for a reversal, viz.: First, the court erred in directing a verdict in favor of defendant; and, second, the assignment of royalty, on its face, is void and unenforceable and should have been canceled by the court.

Plaintiffs in error contend that, under the first assignment, they were entitled to a general verdict at the hands of the jury, and that the court erred in directing a verdict. This was an equity case, as distinguished by our statute from a law case, and one in which the parties were not entitled to a jury, as a matter of right, but one in which the court is authorized in calling a jury to assist in settling disputed questions of fact; its findings, however, to be advisory to the court only, and not in any sense binding upon it. After the evidence was all in, the court was of opinion that the advice of the jury on the facts was not needed; that under the law applicable to the facts, taken in their most favorable aspect to plaintiffs' contention, the defendant was entitled to a judgment. Such action was clearly within the province of the court. Thus, in *Barnes et al. v. Lynch et al.,* 9 Okla. 191, 59 Pac. 1008, it is said:

"The law is, however, in cases of equitable cognizance, that, while the judge may call in a jury, or consent to one, for the purpose of advising him upon questions of fact, that he may adopt or reject their conclusions, as he sees fit, and that the whole matter must eventually be left to him to determine, and that the instructions furnish no ground of error upon appeal. It was not only the right, but the duty, of the court to finally determine all questions of fact as well as of law."

See other cases there cited.

In *Hixon v. George,* 18 Kan. 256, it is said:

"The court, of course, erred in holding that no general verdict could be rendered in the case. The court could, if it had so chosen, have ordered all the issues in the case to be tried by a jury, and could have done so by a general order, without the slightest mention of any particular issue; and then the jury could, unless the court had otherwise ordered, either on its own motion, or at the request of one of the parties, have found a general verdict upon all such issues, without mentioning any particular fact or issue in the case. But the error was immaterial; for in an equity case like this, involving many issues as this does, the court has the power, without giving any reason therefor, to send any portion of the issues which it chooses to a jury to be tried, and to require the jury to make a separate finding upon each of such issues; and the court may try the other issues in the case itself, or it may send them, or any portion of them, to another jury, or to a referee, to be tried. Gen. St. 680, p. 267; *Carlin v. Donegan,* 15 Kan. 496, 497. In this case neither party required that the court should make separate findings, either of fact or of law; and therefore the court did not err in finding generally."

See, also, in support of this principle, *Kimball v. Connor,* 3 Kan. 415; *Gillespie v. Lovell,* 7 Kan. 424; *Carlin v. Donegan,* 15 Kan. 495; *Hixon v. George,* 18 Kan. 253; *McCardell v. McNay,* 17 Kan. 433; *Williams v. Elliott,* 17 Kan. 523; *Rich v. Bowker,* 25 Kan. 12; *Keith v. Keith,* 26 Kan. 41; *Woodman v. Davis,* 32 Kan. 344, 4 Pac. 262. Inasmuch as our statute is identical with the Kansas statute, which we adopted while a territory, and which was brought over by the Constitution, and which adoption also brought with it the construction placed on said statute by the Supreme Court of Kansas, the above authorities are binding on, and will be followed by, this court.

The sections of our statute governing this subject are: Section 5781, Comp. Laws 1909, which reads as follows:

"Issues arise on the pleadings, where a fact or conclusion of law is maintained by one party, and controverted by the other. There are two kinds: First, of law; second, of fact."

Section 5782:

"An issue of law arises upon a demurrer to the petition, answer or reply, or to some part thereof."

Section 5783:

"An issue of fact arises: First, upon a material allegation in the petition, controverted by the answer; or, second, upon new matter in the answer controverted by the reply; or, third, upon new matter in the reply, which shall be considered as controverted by the defendant without further pleading."

Section 5785:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

Section 5786:

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury, or referred as provided in this Code."

These sections have been construed in this court by Harrison, C., in *McCoy v. McCoy*, 30 Okla. 393, 121 Pac. 182, as follows:.

"Section 5781 defines *how* issues arise. Section 5782 defines how issues at *law* arise. Section 5783 how issues of *fact* arise. Section 5785 prescribes what issues of fact *shall be tried by a jury,* unless a jury is waived, or a reference be ordered. Sectino 5786 provides that *all other issues of fact shall be tried by the court,* subject to its powers to order any issue or issues to be tried by a jury, or referred as provided in the Code. These statutes, viewed in the light of the authorities above cited, are susceptible of but one logical construction, viz., that all issues of fact arising in actions for the recovery of money, or for the recovery of specific real or personal property, shall be tried by a jury, unless a jury is waived or a reference ordered. They are mandatory, both in meaning and language, and to refuse a jury in such cases would constitute reversible error; and in section 5786 the language is equally strong, and the provisions equally mandatory, that all other issues shall be tried by the court, subject to its power (discretion) to submit the issues to a jury or direct a reference."

See, also, *Apache State Bank v. Daniels,* 32 Okla. 12, 121 Pac. 237, 40 L. R. A. (N. S.) 901.

It is thus seen that no error was committed by the court in taking the whole subject from the jury. Under the law it was the right, as well as the duty, of the court to determine the issues formed by the pleadings; and while it was the privilege

of the court to submit either specific questions or the general issue to the jury, yet failure to do so is not error, and the assignment based thereon must therefore necessarily fail. In arriving at this conclusion we are not moved by the consideration of the general rule ordinarily observed by trial courts in directing verdicts. The nature of this, case does not permit or require that we bring ourselves within the rule announced in *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776, relating to directed verdicts, although we could easily do so in the instant case. This was originally a case of equitable cognizance, and the issues of fact therein, as well as the issues of law, were primarily for the determination of the court. Having concluded that the court was authorized in directing a verdict in this case, so far as the law itself in that particular is concerned, its finding on the issues must stand, unless, by an examination of all the evidence in the record, we can say, as a matter of law, that a different result should have been reached by the court in the consideration of the evidence. In other words, while the court was justified in passing upon and determining the facts in the case, yet, if error was committed in so doing, the same may be corrected here.

This, of course, necessitates a review of all the evidence in the record. Counsel for plaintiffs in error have not aided us in this regard by a compliance with rule 25 of this court (20 Okla. xii, 95 Pac. viii), which points out the manner in which such questions may be properly presented to the court. Neither does the case-made contain a certificate by way of recital, to the effect that it contains all the evidence introduced at the trial, and, on objection, we would be warranted in refusing to consider the evidence at all; but, inasmuch as defendant in error is satisfied with the condition of the case-made, and has offered no objection thereto, we will overlook the defect and proceed upon the theory that all the evidence is contained therein. The record contains 179 pages of testimony, mostly given by Indians, through an interpreter. As is usual in such cases, it is vague, contradictory, incomplete, and unsatisfactory. This criticism of the character of the testimony applies peculiarly to the witnesses offered by

plaintiffs in error. A court, like a jury, in weighing evidence, is guided largely by the appearance and demeanor of the witness on the witness stand, and considers the interest or lack of interest, the intelligence or lack of intelligence, the bias or lack of the same, the relation and opportunities of seeing and knowing the matters and things of and concerning which the witness testifies, etc. On review of the testimony in this court, all these important criteria and details are wanting, and for that reason, unless it clearly appears in the record that the court erred in its conclusion, the finding of fact will seldom be interfered with on appeal.

"Where a cause is tried to the court, without the intervention of a jury, the court's findings of fact will be given the same weight as the verdict of the jury, and will not be set aside if there is any evidence reasonably tending to support it." (*Wrought Iron Range Co. v. Leach,* 32 Okla. 711, 123 Pac. 421; *In re Byrd, Appeal of Floyd,* 31 Okla. 549, 122 Pac. 516; *McCann v. McCann,* 24 Okla. 264, 103 Pac. 694; *Seward v. Casler et al.,* 24 Okla. 275, 103 Pac. 740; *Lipscomb v. Allen,* 23 Okla. 818, 102 Pac. 86.)

And it is a rule so well established that citation of text or authority is unnecessary that where evidence is conflicting, and there is any testimony in the record reasonably tending to support the verdict of the jury, this court will not examine the same to determine where the weight lies, but will accept the finding of the court or the verdict of the jury as conclusive thereon. With these rules in mind, we have read the entire 179 pages of testimony in this case with care, and, after considering the same, we do not see how the trial court could have reached any other conclusion than that recorded in the judgment in this case. We are in thorough accord therewith, and have no disposition to interfere with it.

As to the other question raised—*i. e.,* that the contract of assignment of royalty is void for the reason that it, in effect, is an alienation of a restricted Indian allotment—we are also compelled to disagree with counsel. Whether the sale of one-half interest in and to the 5 per cent. royalty, which the lessors paid plaintiffs in error for the mineral taken from the allotment in

question, is a sale of the thing itself, and therefore void, because the land is inalienable on account of the restrictions placed thereon by Congress in the act ratifying the allotments, is not, in our opinion, open to discussion, for the reason that the act under which the lease was made, being a federal statute, and having been construed by the federal courts, their holding on the subject is highly persuasive and ordinarily binding on us.

The exact question involved was up for consideration in *United States v. Abrams et al.*, 181 Fed. 847, decided by Judge Campbell, of the Eastern District of Oklahoma, on September 19, 1910, wherein it was said, on page 855:

"On August 16, 1902, the allottee entered into a contract with Charles F. Noble, purporting to 'grant, bargain, sell, assign, transfer and set over' to said Noble all his right, title, and interest in and to the royalty, rental, and proceeds of the mining lease executed by the allottee to defendant Abrams under date of January 11, 1902. We have seen that this lease provided for a cash payment of $10 at date of execution, and 'a sum of money equal to five per centum of the market value at the place mined or produced' of all substances to be mined, except gas, for which lessee was to pay $40 per annum for each paying well, and further provided for a minimum annual royalty of $20. The royalty was to be paid in money, based upon a per centum of the market value of the ore produced. A one-half interest in this contract was later assigned by defendant Noble to defendant Cooper. It is further alleged that on February 21, 1906, the allottee entered into a contract with defendants A. S. and V. E. Thompson, whereby he assigned to them as a fee for their services in litigation arising out of the assignment to Noble one-half of the royalties recovered by the allottee in such litigation. The government seeks to cancel both the foregoing contracts assigning royalty, on the ground that the allottee cannot assign such royalties. The defendants have demurred to the bill, challenging the capacity of the government to sue, and asserting want of equity in the bill. The bill concedes that the lease upon which the royalties attempted to be assigned accrue is a valid lease. The law contemplates that the moneys representing the royalties arising therefrom shall become the absolute property of the allottee, to be disposed of as he may see fit. No provision is here made, as is done in many cases, by which payment shall be made to the Indian agent, and by him disbursed. Such provision would have manifested

Wat-tah-noh-zhe et al. v. Moore.

an intention to extend the supervision of the government over the proceeds of these leases. The absence of such provision, on the other hand, manifests a congressional intent that the proceeds of such leases shall be at the disposal of the Indian. It is his to handle as he may see fit. If it is fraudulently taken from him, he has his remedy like any other citizen, to recover it. It appears from the recitations in the assignments to the defendants Thompson that he invoked that remedy through them as counsel, and assigned to them as their fee a portion of the royalties recovered. I can conceive no reason why such assignments of royalties cannot be legally made. It is true the Indian may make most improvident contracts relating to such assignments, but Congress has seen fit to intrust him with the disposal of the moneys accruing from these royalties; and if, for a consideration satisfactory to himself, he sees fit to realize upon this fund in advance by assigning it, I can conceive nothing in the transaction violating any governmental policy expressed by any legislation relating to these Indians, which has been brought to my attention. In the matter of receiving and disposing of these royalties, as he may see fit, as in the matter of agreeing upon the consideration which shall be paid to him for a lease, for a lawful purpose and term, Congress has seen fit to place the Indian upon his own responsibility; and I cannot escape the conviction that Congress in so doing intended that, to that extent, he should take his place as a citizen of the United States and of the state, together with all other citizens of whatever race or color."

This case was appealed to the United States Circuit Court of Appeals, where, on May 23, 1912, in an opinion by Smith, Circuit Judge, the lower court was affirmed. *United States v. Noble,* 197 Fed. 292. On page 295 Judge Smith said:

"It is true that at the time of the making of the assignments the ores were in the ground and part of the real estate; but the leases contemplated, as the law in authorizing mining leases must have contemplated, their separation from the real estate, and this far the leases were clearly legal. They provided, not for turning over to Blackhawk 5 per cent. of the metal mined, but that the party of the second part should pay to the party of the first part a sum of money equal to 5 per cent. of the market value of all minerals. It was the sum of money which was assigned, and this was not a violation of the prohibition of alienation for 25 years."

This, in our opinion is conclusive on us, and no further consideration of the questions involved is necessary.

It therefore follows that the judgment of the district court, holding the assignment of royalty valid, should be affirmed, and in addition the judgment should be amended and enlarged so as to hold the lease made on August 7, 1908, by plaintiffs in error to defendant in error, and which does not commence to run until June 14, 1917, and which was recorded in Book 4, at pages 278, 279, in the office of the register of deeds of Ottawa county, Okla., on November 20, 1909, null and void, and canceled of record. Costs to be equally divided.

By the Court: It is so ordered.