## McDONALD et al. v. MILLER et al.

No. 10569. Opinion Filed Nov. 18, 1919.

Rehearing Denied Jan. 27, 1920.

(Syllabus by the Court.)

### 1. Homestead—Transfer — Avoidance—Question of Fact.

In an action by the husband and wife to have a contract for the sale of forty acres of land declared null and void, and for damages for the unlawful detention of the premises, for the reason said land was their homestead, the wife not joining in the execution of said contract, where said action was commenced five years after the contract was entered into, and after the parties had taken possession of said land under said contract, and the evidence disclosed that said land was about a half-mile from the rural home occupied by plaintiffs, and the plaintiffs had never resided upon the land in controversy, as to whether said land had been selected or impressed with the homestead character prior to the time the husband entered into said contract, was a question of fact for the court and jury to determine under all the facts and circumstances in the case.

### 2. Same—Review—Evidence.

Without deciding whether said case under the pleadings was a case triable before the court or jury, it is sufficient to say the evidence examined, and held that the judgment of the court is not clearly against the weight

of the evidence, and the verdict of the jury was sufficiently supported by the evidence.

Error from District Court, Kingfisher county; James B. Cullison, Judge.

Action by James McDonald and wife against Cecelia Miller and another. Judgment for defendants, and plaintiffs bring error. Affirmed,

Geo. L. Bowman and F. E. Riddle, for plaintiffs in error.

D. K. Cunningham, for defendants in error.

McNEILL, J.    This action was commenced in the district court of Kingfisher county in May, 1914, by James McDonald filing suit against Cecelia Miller and Charles Miller to cancel a certain contract entered into between James McDonald and the Millers wherein McDonald contracted to convey forty acres of land to the Millers, and for damages for wrongful detention of premises. The petition alleged the Millers had failed to comply with the terms of the contract in making certain payments due thereon, and had forfeited their rights, under the contract. Upon the trial of the case judgment was rendered in favor of James McDonald. The court cancelled the contract and quieted title in James McDonald. The Millers appealed to this court and on appeal the case was reversed, being reported as Miller v. McDonald. 63 Oklahoma, 163 Pac. 533.

After the reversal, Lilla McDonald asked permission to be made a party plaintiff in the case, and filed an amended petition alleging that the land in question was the homestead of herself and James McDonald and that she had never signed the contract or relinquished her homestead interest in said premises, and for that reason the contract executed by James McDonald, to the Millers was null and void. The Millers answered setting up numerous defenses, by way of estoppel. The case was tried to a jury, and a verdict returned in favor of the Millers, and judgment was rendered by the court in favor of the Millers for their costs. From said judgment the plaintiffs McDonalds have appealed.

The material facts as we gather from the evidence are that the McDonalds prior to the time of purchasing this land owned 160 acres of land in Pawnee county. That they moved from Pawnee county to Grady county and while living in Grady county purchased 33 acres of land in Kingfisher county, being in the same section as the forty acres involved in this case, and thereafter purchased the forty acres. These purchases were made in 1909. The lands, while in the same section, are more than one-half mile apart, and are not connected in any way. About the year 1911 the McDonalds moved from Grady county to Kingfisher county and built a home on the thirty-three-acre tract, where they have lived and occupied the same as a home until about a year before the trial of this case in 1918. They never lived upon the forty-acre tract, but always rented the same.

On December 13, 1912, James McDonald entered into a written contract to sell said land to the Millers, the consideration being the payment of $100 down and $400 to be paid on the 1st of March, 1913, at which time a deed should be executed by McDonald and the Millers to execute a note for $2,000.00 due in ten years, secured by a mortgage on the land. At the date of the contract the land in question was occupied by a third party. The Miller boys worked at times for the McDonalds during the year 1912. In March of 1913 the Millers moved on the place, but did not pay the $400 due, but paid $150 and it was agreed in writing that the payment of the $250 might be extended to March 1, 1914. There is some controversy over the money being tendered in 1914, and that James McDonald brought suit to cancel the contract. The amended petition of Mrs. McDonald upon which this case was tried was filed in April, 1918. Upon the trial of the case McDonald and his wife both testified that when they purchased this forty acres of land in 1909, they purchased it for a home and intended the forty acres and the thirty-three acres to constitute their homestead, and such was their intention when they built their home on the thirty-three acres in 1911. Mrs. McDonald testified that she had no knowledge of the contract being executed by Mr. McDonald to sell the land and never knew that McDonald had entered into said contract with Millers until the controversy arose over the payment of the money in the spring of 1914. The Miller boys had occupied the land since March, 1913. The Miller boys testified that one of them worked for the McDonalds in 1912 and 1913 and both were at the McDonald home often and had talked to Mrs. McDonald about the purchasing of the land, before and after the purchase of the same, and she stated she was glad they had purchased it, that the property belonged to Mr. McDonald and that he was getting no benefit from the same as the rent amounted to practically nothing: that he was old and could not take care of it. They further testified that she knew at the time they had purchased it, and that she acquiesced in the sale and she knew they had built improvements on the place, and knew all of these facts, but always remained silent about same being a homestead.

The plaintiffs in error for reversal argue: First, that the court erred in overruling

plaintiffs' motion for a directed verdict; second, the giving of instruction No. 10; and third, that the judgment of the court is clearly against the weight of the evidence. All of these questions are argued together as one proposition.

Section 3343, Revised Laws 1910, is as follows:

"The homestead of any family in this state, not within any city or town, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. * * *"

Plaintiffs in error admit that they never lived on the premises in question, but testified they intended the same for a part of their homestead, and used and occupied the same as a part of their homestead. A rural homestead in this state may consist of one hundred sixty acres of land, which may be in one or more parcels to be selected by the owner. As to what is necessary to constitute a selection or how a selection may be made or how separate parcels of land may be selected or designated as a homestead, where the parties do not actually reside upon said land, is a question that is not regulated by statute. While the statute provides that the owner may select several parcels as his homestead, yet as to how said selection should be made or when the same should be made, the statute is silent. So each case must be governed to a certain extent by the facts in that particular case.

The question of rural homestead is elaborately discussed by Justice Rainey in the case of McCray v. Miller, decided October 14, 1919 (not yet officially reported). While the exact question involved in the case at bar was not involved in the case of McCray v. Miller, yet the same principle is involved.

This court has held that unoccupied lands may be designated or selected as a homestead. This rule is announced in the case of Illinois Life Insurance Co. v. Rogers, 61 Oklahoma, 160 Pac. 56. The court in that opinion quoting from the case of Foley v. Holtkamp, 28 Tex. Civ App. 123, 66 S. W. 891, stated as follows:

"A homestead may be created by intention prior to actual occupancy, when it appears that the owner is entitled to the exemption as the head of a family, and that this intention has been manifest by such acts as amount to reasonably sufficient notice of that intention; the purpose of the law being to require such open evidence of this intention as will prevent the use of this right as a shield for fraud."

And, again, quoting from the case of Cameron v. Gebhart, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832, stated as follows:

"'The intention thus to appropriate the property shall not only be found in the mind of the party, but should be evidenced by some unmistakable acts, showing an intention to carry out such design, or some sufficient reason should be given why this intention was not demonstrated by such acts.' In this case this general rule is announced: 'From these decisions it is apparent that intention is almost the only thing that may not be dispensed with in some state of case; and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption.'"

While Mr. and Mrs. McDonald both testified they intended this land as a part of their homestead, yet there is no evidence that this intent was ever communicated to any one, nor was the public advised of this intention by any overt act or declaration on their part. There is no evidence that any declaration of any kind or character was ever made that this particular land was claimed or had been selected by them as a homestead, until the time of filing the amended petition in this case, which was some five years after Mr. McDonald had contracted in writing to sell the same. Under these circumstances, it was a question for the court and jury by considering all the facts and circumstances in the case to determine whether the McDonalds were claiming said land as a homestead in good faith, and whether they had made such a selection as was anticipated by the Legislature, and whether the acts and conduct of the McDonalds were sufficient to impress the lands as a homestead, or the claim of homestead was made simply for the purpose of defeating a contract of sale which Mr. McDonald had entered into.

This court, in the case of Elliott v. Bond, 72 Oklahoma, 176 Pac. 242, in the opinion in the case by Justice Tisinger, stated as follows:

"And, in the absence of any statute to the contrary he, as owner, had the right to select 160 of the 180 acres, so impressed with the homestead character, as the homestead of his family, whenever the necessity for making such selection might arise provided such selection included the residence or home of the family and was not manifestly made in disregard of the rights of others. Jaffrey v. McGough, 88 Ala. 648, 7 South. 333; Sparks v. Day, 61 Ark. 570, 33 S. W. 1073, 54 Am. St. Rep. 279."

In view of the decisions of this court and the Constitution and the statutes of this state, which provide that the rural homestead may consist of one or more parcels of land not to exceed 160 acres, whether a parcel of land disconnected from the premises occupied as a homestead was intended as a homestead, or has been selected as a homestead, is

a question of fact to be determined by the circumstances in each case. Considering all the facts and circumstances in this case, we do not think the judgment of the trial court is clearly against the weight of the evidence, or if a jury case, we think the evidence was sufficient to support the verdict of the jury.

The court gave instruction No. 6, which is as follows:

"You are instructed that if you find from the evidence that said plaintiffs purchased, designated and claimed said land in question as a part of their homestead before the making of said contract complained of, and intended to make same as part of their homestead, prior to the date the contract was made and signed by the plaintiff, James McDonald, then in that event the said Mrs. Lilla McDonald, not having signed said contract, said contract would be void and you will so find."

And the plaintiffs complained of instruction No. 10, which is as follows:

"You are instructed that the mere fact that a person buys a piece of land for the purpose of making same a homestead or a part of his homestead, does not of itself make such land his homestead or a part thereof, he must go further and use or occupy such lands in such a manner as to impress upon same the homestead character. And you are further instructed that the mere fact of renting out the land or going to gather or sell apples therefrom, is not sufficient to create the homestead character or impress the land with a homestead character."

Instruction No. 10 is subject to criticism under the facts in the case and taken alone would be misleading to the jury, as there was no evidence in the case that the plaintiffs had occupied the premises, as they contended they used the premises as a homestead in connection with the parcel of land where they lived. When the instruction is considered with the instruction numbered 6, it is not such an instruction that would require a reversal in the case, unless the court can say from the entire record that the jury was misled by said instruction, and the plaintiffs in error had been prejudiced thereby and the giving of said instruction resulted in the miscarriage of justice. The law in this state regarding the reversal of a case for misdirecting the jury is controlled by statute, to wit, section 6005, Revised Laws 1910, which is as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

If considering instruction No. 6 and No. 10 together, which were given by the court, and the further fact that the defendants were entitled to an instruction upon the question of estoppel, as to whether Mrs. McDonald would be estopped by her conduct from claiming the property as a homestead, and the fact that the court failed to give any such instruction or submit the defendants' theory of the case to the jury, we cannot say from an examination of the entire record, and we do not believe, that the giving of instruction No. 10 is sufficient to require a reversal of the case, nor can we say that the judgment of the court or jury would have been otherwise, had such instruction not been given.

Plaintiffs in error suggest that this was not a jury case, and if that is true, they could not predicate error upon the giving of said instruction. If the case is not a jury case, under the theory of the plaintiffs in error, there would only be the one question, to wit: Was the finding of the trial court clearly against the weight of the evidence? We believe from an examination of the record that the judgment of the court is not clearly against the weight of the evidence, but on the contrary is supported by the evidence.

For the reasons stated, finding no material error in the record, the judgment of the trial court is affirmed.

OWEN, C. J., and PITCHFORD, HIGGINS, and BAILEY, JJ., concur.