**HARJO et al. v. COLLINS et al.**

No. 19808.   Opinion Filed Sept. 9, 1930.

Rehearing Denied Dec. 3, 1930.

132

William Neff, John T. Cooper, and A. C. Kidd, for plaintiffs in error.

Hart & Edwards and Lee Williams, for defendants in error.

EAGLETON, C. Fulkah Harjo and Lucy Harjo, husband and wife, full-blood Seminole Indians, filed suit against C. P. J. Collins and others in the district court of Seminole county, on July 26, 1927, alleging that they were the sole heirs of Jacob Harjo and Louis Harjo, their full-blood sons who died in infancy; that these children were allotted certain real premises in what is now Seminole county; that they, as such heirs, were the owners of said real premises; that the defendants claimed some adverse interest or title in and to the same; that the records of the county clerk disclosed some 20 deeds and other conveyances purporting to affect the title thereof, which deeds and conveyances were placed of record in pursuance of a fraudulent scheme conjured up by Henry T. King and Tom Factor and their associates for the purpose of defrauding them, the plaintiffs, out of said land; that any and all deeds and conveyances purporting to have been executed by them were forgeries or were fraudulently obtained. They prayed for judgment establishing their titles, for possession of the property, and for a decree canceling of record these spurious conveyances and quieting their titles.

The defendants pleaded that they were the owners of said premises, and had been in the open, notorious, adverse, and peaceful possession thereof for more than 16 years; that their title was derived by mesne conveyances from the plaintiffs, who made, executed and delivered certain conveyances, which deeds were executed and delivered in the year 1910, for valuable considerations, which were duly paid; that said deeds made by the said plaintiffs were duly and properly approved by the county court having jurisdiction of the administration of the estates of the deceased allottees. They further plead facts charging the plaintiffs with laches as a foundation to estop them from claiming adverse title to the premises.

The plaintiffs filed a reply which was a verified general denial thereto.

A jury was waived, the cause was tried to the court, and judgment was entered for the defendants, quieting their title in and to said premises. The court, in entering judgment, found that the deeds were executed by the plaintiffs; that valuable consideration had been paid therefor; that these deeds had been properly approved by the proper county court, and that no fraud inhered in the transactions.

The plaintiffs appealed the cause to this court and brief their case under the following propositions: (1) The plaintiffs received no consideration for the pretended sale of these lands; (2) Lucy Harjo did not sign the deeds to J. W. Bolen; there was a total failure of proof that Fulkah Harjo executed either of the deeds to J. W. Bolen; (3) the evidence is conclusive that the plaintiffs, who cannot read English, did not knowingly execute the deeds relied upon by the defendants, and these deeds have no more effect than if they were absolutely forgeries; (4) Henry T. King, the real purchaser, was the administrator of the estates of Jacob Harjo and Louis Harjo, the deceased allottees; he was guardian of the plaintiffs' living children at the time these deeds were executed; he was legally disqualified to buy the land in controversy; and undue influence would be implied against him and those holding under him.

It is admitted that a number of deeds and other conveyances purporting to convey these titles are of record in Seminole county; that the defendants' title must stand or fall on two deeds purporting to have been executed by the plaintiffs to J. W. Bolen. The first deed was claimed to have been executed January 26, 1910. Tom Factor acted as interpreter. Henry T. King, as notary public, took the acknowledgment thereof. It was approved by Hon. T. S. Cobb, judge of the county court of Seminole county, which court had jurisdiction of the administration of the estates of the deceased allottees.

The second deed was claimed to have been executed on September 2, 1910. Henry T. King, as notary public, took the acknowledgment, Tom Factor appears to have acted as interpreter, and the same was approved by Hon. T. S. Cobb, judge of the county court, on February 11, 1911.

It is admitted that Henry T. King was the guardian of the living children of the plaintiffs in this action, and was administrator of the estates of Jacob Harjo and Louis

Harjo from sometime in 1907, until October 31, 1910.

Fulkah Harjo testified that he never intended to sell this land, and if he had signed any instrument purporting to convey the same, his signature was fraudulently obtained; he relied absolutely on what he was told by Tom Factor in signing any documents which he signed; that he did make and sign a lease to Henry T. King on this land through the offices of Tom Factor as interpreter. He testified that he scarcely knew Henry T. King, saw him but a few times, and had no close business relations with him at any time. He admitted his signature to one of the deeds; was uncertain in his denial of other instruments, saying, "I do not know," or "I would not say." He admitted that he learned in 1910 that this land was claimed to have been purchased by J. W. Bolen.

Lucy Harjo testified that she scarcely knew Henry T. King; that she signed anything her husband asked her to; that she knew Tom Factor well; that she did not knowingly sign any deed to these premises.

The plaintiffs introduced the deposition of J. W. Bolen, to whom this land was claimed to have been sold, who testified that he was one of the associates in the Seminole Land Company, which company carried on a business of buying up Indian titles; that V. V. Harris, one of the associates therein, endeavored to purchase this land and obtained a deed therefor to the Seminole Land Company; that Henry T. King, in 1910, advised him that this title was no good; the deed had not been approved; that a deal was entered into between him, the said Bolen, and the said King, whereby King would make the arrangements with the remaining associates of the Seminole Land Company, and they would perfect the title to this land and divide the profits therefrom, J. W. Bolen taking one-half thereof. King does not appear to have been otherwise associated with the Seminole Land Company or its members. He further testified that he personally took no part in the negotiation of these transactions; that all the negotiations and proceedings were handled, so far as he knows, by Henry T. King; that he was not called on for any money to handle the deal, and presumes that King made those arrangements; that he was informed that one of the other associates in the Seminole Land Company had advanced the money; that he, the said Bolen, received his portion of the profits on this land after a sale thereof was had.

The plaintiffs also, without objection, introduced in evidence an affidavit made by Tom Factor on January 26, 1910, wherein Tom Factor stated that he acted as interpreter and explained to Fulkah Harjo and Lucy Harjo the deed to J. W. Bolen on that day executed; that they claimed to have theretofore received money from the sale of the land; that they claimed no further interest in the premises; that the consideration agreed upon therefor by J. W. Bolen was paid and otherwise secured to be paid in a manner satisfactory to them; and that they signed the warranty deed of their own free will and accord without any undue influence whatever, and that they fully understood the same.

The defendants testified that they did not know the plaintiffs, and they had never seen them before this trial; that in purchasing this land they relied on the record titles, the above approved deeds to J. W. Bolen and certain affidavits executed by the plaintiffs which were shown to them wherein the plaintiffs acknowledged receipt of the payment of the purchase price thereof to them; that they had been in the quiet and peaceful possession of the land for more than 16 years claiming title thereto, and that their first knowledge of the adverse claims of the plaintiffs was obtained when this suit was filed; that they had an attorney to examine the titles, and he approved them.

June Factor, who acted as interpreter when Fulkah Harjo signed an affidavit reciting his agreement to sell this land to Mr. Bolen, testified that she fully explained the same to him, and that he fully understood it before he subscribed his name thereto.

Frank P. Swan, the notary public who took the acknowledgment of that affidavit, testified that he took it, that the instrument was explained fully to Fulkah Harjo by June Factor before it was signed and acknowledged, and that it was willingly signed by Fulkah Harjo.

Mr. Ford, who was county court clerk of Seminole county on January 18, 1911, testified that he took the acknowledgment of Fulkah Harjo and Lucy Harjo to affidavits signed by them on that day wherein the said plaintiffs acknowledged final payment from J. W. Bolen of the consideration for the deed which they had made to him; that, at the request of Lucy Harjo, he wrote her name thereon, she having signed by mark. He testified that the instrument was explained to the plaintiffs by Tom Factor, who acted as interpreter; that some money was paid to the plaintiffs at the time, he thought it was by check.

Judge Cobb testified that he had approved these deeds as shown by the record, but he did not recall the incidents thereof; that it was his custom, and he was sure that he did examine the parties fully before he approved the deeds; that he frequently appointed a referee to hear evidence and recommend to him whether or not he should approve a full-blood deed. He was of the opinion that Tom Factor acted as interpreter in the transaction; that he knew both Tom Factor and Henry T. King well and had confidence in them.

A referee's report recommending the approval of the first deed was introduced in evidence. W. N. Stokes was the referee.

At the time of the trial both Tom Factor and Henry T. King were dead.

Let us see what the real contentions of the plaintiffs were. They claimed that they signed no instruments except those explained to them by Tom Factor, that they thought they were making a lease on this property to Henry T. King, and that they did not intend to sign a deed. The evidence of the plaintiffs is very unsatisfactory, incomplete, and uncertain. Fulkah Harjo refused to deny his signature to the deed to J. W. Bolen which was exhibited to him at the trial. Lucy Harjo threw no light on the transaction. Seemingly, they rely only upon two propositions to recover this land: First, Henry T. King was interested in these purchases together with J. W. Bolen, the purchaser, and being so interested he was incompetent as a notary public to take their acknowledgments thereto; next, that Henry T. King was guardian of their living children and administrator of the estates of the deceased allottees from whom they, the plaintiffs, inherited their titles, and was in such fiduciary capacity that the law would not permit him to purchase property from the plaintiffs.

The testimony of the plaintiffs fully discloses that they had no such relationship with Henry T. King as would sustain an implication that he could, because of his confidential relationship to them, impose upon them. They had practically no business dealings together. These Indians reposed no confidence in him according to their own testimony.

It is true that there is no evidence refuting the fact that Henry T. King had a financial interest in profits to be received from the sale they were making, and as such on a direct attack his acknowledgments could be impugned. However, it is a rule in this state that an instrument acknowledged before a notary public who is interested in the transaction, which interest does not appear upon the face of the instrument, is subject to record, and purchasers or incumbrancers thereof can rely upon the recorded instrument. Watts v. First Nat. Bank, 8 Okla. 645, 58 Pac. 782; Kee v. Ewing, 17 Okla. 410, 87 Pac. 297; Ardmore National Bank v. Briggs Machinery & Supply Co., 20 Okla. 427, 94 Pac. 533; Lankford v. First National Bank, 75 Okla. 159, 183 Pac. 56.

The deeds to this land and certified copies of the recorded deeds regularly acknowledged were admitted in evidence without objection. The trial court found that Fulkah Harjo had admitted his signature to the first deed. There is a plentiful and convincing chain of evidence establishing that both the plaintiffs in this suit, with full knowledge, sold this land and executed and acknowledged both these deeds. The evidence fully sustains the findings that the deeds were made by the plaintiffs voluntarily and signed of their own free will and accord without any undue influence or fraud, and that Lucy Harjo's name was subscribed thereto after she had signed by mark. The evidence fully sustains the finding that a valuable consideration was paid to the plaintiffs for these titles though the exact amount thereof and when the same was paid is not clear. Fulkah Harjo in writing on numerous occasions acknowledged the making of these conveyances, the sale to J. W. Bolen, and the receipt of payments and the final payment of the consideration therefor. Lucy Harjo acknowledged by affidavit making these deeds and the receipt of the final payment of the consideration therefor.

The fact that Henry T. King was administrator of the estates of Jacob Harjo and Louis Harjo is a suspicious circumstance which would cause the transaction to be scrutinized with great care and place upon the defendants herein the burden of proof to establish the absence of fraud, but the evidence of the plaintiffs shows that the plaintiffs had no such a confidential relationship with King, and that they had no such confidence in him as would suggest that he exercised undue influence over them. Where a fiduciary relationship exists, such relationship implies a condition of superiority held by one of the parties over the other in every transaction between them by which the superior party obtains a possible benefit, and equity raises a presumption against its validity, and, to overcome the presumption, casts upon the

party the burden of proving affirmatively his compliance with equitable requisites. But he bought nothing and participated in the purchase of nothing from the estates which he represented. It was proved by a preponderance of the evidence, and by the admissions of the plaintiffs themselves, that the sale of this land to J. W. Bolen was freely and voluntarily made by them, and that they were satisfied at that time with the consideration paid therefor. Watts v. Jackson, 75 Okla. 123, 182 Pac. 508; Brink v. Canfield, 78 Okla. 189, 187 Pac. 223. The affidavit of Tom Factor, introduced by the plaintiffs themselves, was sufficient to sustain the introduction in evidence of the first Bolen deed and to replace on the plaintiffs the burden to show fraud in the transaction. The evidence fully sustains the judgment of the trial court. We find no merit in any of the assignments of error made by the plaintiffs in error herein. The complaints under which the plaintiffs' cause is briefed have no merit. The cause is therefore affirmed.

HERR, LEACH, DIFFENDAFFER, and REID, Commissioners, concur.

By the Court: It is so ordered.