WHITE et ux. v. MORROW.

No. 28219.   Feb. 13, 1940.

Rehearing Denied March 19, 1940.

Application for Leave to File Second Petition for Rehearing Denied April 9, 1940.

100 P. 2d 872.

Bailey & Hammerly, of Chickasha, for plaintiffs in error.

John F. Butler, of Oklahoma City, and Hatcher & Bond, of Chickasha, for defendant in error.

DAVISON, J.   The defendant in error commenced this action, as plaintiff, against the plaintiffs in error, as defendants, to cancel a deed he executed and delivered to them on October 2, 1931, and to quiet his title to the 40-acre tract of land thereby conveyed.

The parties will hereinafter be referred to as they appeared in the trial court.

The defendant B. E. White is the wife of the defendant E. White and the sister of the plaintiff. The cause alleged for the relief plaintiff sought was that the deed was not absolute, but was executed and delivered merely as a conveyance in trust.

In their answer the defendants denied the plaintiff's allegations except the execution and delivery of the deed and claimed that they had paid a good and valuable consideration for same. Apparently upon the theory that said deed was an absolute and binding conveyance vesting title to the land in them, they prayed that their title be quieted against the plaintiff.

After the jury was impaneled, the defendants requested findings of fact and conclusions of law by the court upon the theory that the cause was one of equitable cognizance. At the close of the trial and before the jury had returned its general verdict in favor of the plaintiff, the defense counsel filed a motion asking the court to discharge the jury and "render a verdict" in favor of the defendants. This motion was also predicated on the ground that the cause was of equitable cognizance, but

the same was overruled and exception taken to said ruling. After the verdict was returned, the court entered judgment thereon and subsequently overruled a motion for judgment notwithstanding the verdict and a motion for a new trial, both of which had been filed by the defendants.

The defendants' assignments of error are merged and dealt with in three general propositions, the first of which is as follows:

"The court erred in refusing to withdraw said cause from the jury and try the same as one of equitable cognizance and to make findings of fact and conclusions of law therein."

The argument advanced in support of this proposition is based upon the hypothesis that the present action is one of equitable cognizance. Granting the correctness of such a hypothesis, the ultimate question to be decided, then, is: Do the errors assigned constitute cause for reversal? Although this court, in Wat-Tah-Noh-Zhe et al. v. Moore, 36 Okla. 631, 635, 129 P. 877, 878, 879, expressly recognized that it was bound by the decision of the Kansas Supreme Court in Hixon v. George, 18 Kan. 256, holding that under Kansas Statutes identical with sections 5785 and 5786, Comp. Laws 1909 (secs. 350 and 351, O. S. 1931), a cause of equitable cognizance may correctly be submitted to a jury for a general verdict, there seems to be some basis aside from those statutes for the contention that such submission is erroneous. See Apache State Bank v. Daniels, 32 Okla. 121, 121 P. 237. In Millus et ux. v. Lowrey Bros., 63 Okla. 261, 164 P. 663, L.R.A. 1918B, 336, it was held error to submit an issue as to the existence of grounds for an attachment to the jury for a general verdict, but it was also held that:

"Such error will necessitate a reversal only when upon an examination of the entire record, it appears that the same has probably resulted in a miscarriage of justice or violates a constitutional or statutory right."

In that case it was pointed out that there is no constitutional guaranty as to the right of a trial exclusively by the court without the intervention of a jury. The defendants do not, nor could they successfully contend, that they had any statutory right to such a trial of the present case, but they merely quote expressions of this court concerning the *right* to a jury trial in a cause of equitable cognizance. The decisions cited do not pertain to the court's power to submit such a cause to a jury, but are germane only to the right of a litigant therein to have such power exercised. In other words, they deal only with the right of trial by jury in such cases and constitute no precedent or basis for the creation or maintenance of a "right" to a trial *without* a jury in any character of action.

Since the ultimate effect of both of the alleged errors set forth in the defendants' first proposition may perhaps be considered in the aggregate, we will now consider the court's refusal to promulgate findings of fact and conclusions of law before finally determining whether or not the erroneous submission of the present cause to a jury constitutes reversible error.

The Oklahoma statute pertaining to findings of fact and conclusions of law at the request of one of the parties is section 374, O. S. 1931 (12 Okla. St. Ann. § 611), which reads:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing, the conclusions of fact found, separately from the conclusions of law."

It will readily be seen that the quoted statute refers expressly only to cases wherein the questions of fact are tried by the court, and makes no mention of causes wherein such questions have been submitted to a jury or are

triable by the court. For this reason said statute is of no assistance in solving the problem before us in the present case. In view of this fact, resort will again be had to Apache State Bank v. Daniels, supra, which has so often been cited for the prescription of the court's duty to enunciate its own judgment upon the issues in a cause of equitable cognizance that has been submitted to a jury for a general verdict. According to the decision in that case, such error does not constitute cause for reversal, if it affirmatively appears that the trial judge "reviewed the evidence and reached the same conclusion as the jury." See, also, the quotation from Dunphy v. Kleinschmidt et al., 11 Wall. 615, 20 L. Ed. 223, appearing in Carter v. Prairie Oil & Gas Co., 58 Okla. 365, 370, 160 P. 319, 321. From an examination of the opinion in the Daniels Case, it is plain that a general finding and conclusion is all that is necessary to meet the requirement of a determination by the court, separate and apart from the verdict of the jury. In the absence of a statutory guide, it is not inappropriate to use this as a criterion or measure of the court's duty to comply with the defendants' request for findings of fact and conclusions of law in the present case. There is no question but what the judgment before us fails to meet this test. The journal entry of said judgment contains nothing but a transcript of the verdict and a decree by the court in conformity therewith. The record reveals no indication that the trial court weighed the evidence or arrived at any independent finding or conclusion, either general or special, upon the issues of fact or of law involved in said cause. However, in the absence of a constitutional or statutory provision requiring the court in such a case to promulgate special findings of fact and conclusions of law, can it be said that the trial court's failure to discharge its duty of incorporating in its judgment a general finding and conclusion has in any manner prejudiced the rights of the defendants or resulted in a miscarriage of justice, when such a finding and conclusion, if promulgated, would not have been contrary to law or against the weight of the evidence? In our opinion this question must be answered in the negative. In Maynard, Ex'r, et al. v. Hustead et al., 185 Okla. 20, 90 P. 2d 30, a cause of equitable cognizance was erroneously submitted to a jury and judgment was thereafter entered upon a general verdict, without a determination of the issues of fact or law by the court, but we there held that such error is not cause for the reversal of such a judgment as a determination of the issues of fact, unless the same is against the clear weight of the evidence. We see no reason for not applying the same test to the same errors in the present case, since said errors do not, in themselves, constitute a denial of statutory or constitutional right and it is not argued nor does it appear that the judgment, in itself, is contrary to law.

This brings us to a consideration of the defendants' second proposition, to wit: "The judgment of the court is clearly contrary to the weight of the evidence." As hereinbefore indicated, the decisive question of fact in the present case was whether the deed of October 2, 1931, was an absolute and unqualified conveyance, as it purported to be, or merely a conveyance in trust. In arguing their contention as to the weight of the evidence, the defendants simply insist that the version of the deed transaction upon which the plaintiff relies for a cause of action is unreasonable and this unreasonableness, when considered with the positive evidence introduced on behalf of the defendants, makes it unworthy of belief.

According to the undisputed testimony, the plaintiff had owned the land involved for several years prior to the transaction in question, and several months prior thereto he had suffered a severe personal injury, which, according to testimony introduced on his behalf, rendered him both physically and mentally incapable of attending to his

own business affairs. For some time after the plaintiff's injury, his wife had had all his valuable papers in her possession, but according to the plaintiff's testimony, the defendant E. White had, previous to the transaction in question, persuaded him to obtain them from her and turn them over to him (White) so that he could thenceforth handle the plaintiff's business for him. The plaintiff's theory of the deed transaction, supported by his own as well as his wife's testimony, is that he was induced to execute and deliver said deed to White by the latter's representations that said transfer of title would enable the said White to procure for $500 the release of a purported mortgage in the sum of $3,400, covering the farm involved herein, which White claimed to have discovered among the papers with which the plaintiff had previously entrusted him. Besides the testimony of his wife, the plaintiff was further corroborated in several minor details of his testimony by the witness W. M. Rives, who was the mortgagee named in the "bogus" mortgage, as well as by other evidence which it is unnecessary to describe.

In support of their testimony to the effect that the transaction evidenced by the deed was an absolute and unqualified sale and was so intended by the parties thereto, the defendants introduced the written "agreement and contract of sale," which they claimed prescribed the true terms of the sale. Said instrument describes the conveyance from the plaintiff to the defendant E. White in absolute rather than conditional terms, and provides for the payment by the latter of $500 as the consideration therefor. According to said instrument, the consideration was to be paid by White's payment of various encumbrances on property owned by the plaintiff and debts that he owed. Canceled checks drawn upon the personal account of White were introduced to show that he had paid the consideration prescribed in the purported contract.

When confronted with the "agreement and contract of sale," while on the witness stand, the plaintiff did not deny that he had signed it, but testified that he could not read and in a measure demonstrated this handicap to the jury. When questioned concerning White's payment of the consideration prescribed in the writing, the plaintiff did not deny that White used his own checks to make the payments, but asserted that the money to pay those checks had been derived from $500 of his own funds which he had delivered into Mrs. White's custody for the payment of his debts while he was disabled.

On behalf of the defendants there was testimony that at the time of the conveyance, the land was worth no more than $500, in addition to a mortgage indebtedness in the amount of $2,000 with which it was encumbered, but the plaintiff claimed that it was worth much more than that.

As to the plausibility or reasonableness of the version of the transaction related by the plaintiff and his former wife, it must be recognized that the execution of a contract such as the defendants exhibited is somewhat inconsistent with any alleged understanding on their part that the transaction was merely a conveyance in trust rather than an absolute and unqualified alienation, but this fact might reasonably be deemed to have been explained and its weight as evidence diminished or offset by the evidence of the plaintiff's meager education, his limited ability to read, his physical and mental condition, and the relationship of confidence and trust that existed between him and the defendants.

Counsel for the defendants assert that the evidence to the effect that the conveyance in question was not an absolute and unqualified one is not of the "clear, cogent, and convincing" character that it must be to overcome the legal presumption that a written instrument is what it purports to be. Assuming without deciding that this assertion is well grounded upon established principles of law and is applicable to the present case, it should be remembered that such

a presumption may not arise, or, if so, may be more readily overcome, where a confidential or fiduciary relationship exists between the parties, inadequacy of consideration is shown, and the circumstances surrounding the transaction suggest fraud, mistake, duress, or undue influence. See Harjo v. Collins, 146 Okla. 131, 293 P. 179, 72 A. L. R. 1034; McDaniel v. Schroeder, 128 Okla. 91, 261 P. 224; Clinton v. Miller, 77 Okla. 173, 186 P. 932; Teague v. Murphy, 91 Okla. 116, 216 P. 475; Weitz v. Moulden, 109 Okla. 119, 234 P. 583; Johnson v. McCray, 122 Okla. 301, 254 P. 979; Griffith v. Scott, 128 Okla. 125, 261 P. 371; Rector v. Bay, 91 Okla. 14, 215 P. 415. If it were not for such a limitation, great weight and importance might be given the fact that the plaintiff executed a contract of sale and a warranty deed, both of which contained language of absolute sale and conveyance. In this connection, see Dusbabek v. Bowers, 173 Okla. 53, 43 P. 2d 97, where the presumption that a person signing a written instrument knows its contents yielded to the charge of fraud. We think the decisions holding that presumptions of the veracity and validity of written instruments must yield in such cases are entirely consonant with a search for the truth and the accomplishment of justice. Such presumption should be more easily overcome in the instance of a written alienation or conveyance between persons in a confidential relationship than in case of such a conveyance between parties dealing at arm's length. See the definition of "confidential relation" in Derdyn v. Low, 94 Okla. 41, 220 P. 945. In fact, there is a conflicting presumption in case of a confidential relation that claims a degree of consideration. In McDaniel v. Schroeder, supra, it was held:

"Where the parties stand in the relationship of trust and confidence, and the party in whom the confidence is reposed obtains an apparent advantage over the other in a transaction between them, such transaction is presumed to be void, and the burden of proof is upon the party who seeks to support it to show by clear proof that he has taken no advantage of his influence and that the transaction is fair and conscientious."

In the above case we cited our approval in Logan v. Brown, 20 Okla. 334, 95 P. 441, 20 L. R. A. (N. S.) 298, of the following statements:

"While equity does not deny the possibility of valid transactions between parties where a fiduciary relationship exists, yet, because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts upon that party the burden of proving affirmatively its compliance with the equitable requisites, and of thereby overcoming the presumption. The broad principle on which the court acts in cases of this description is that whenever there exists such a confidence, of whatever character that confidence may be, as enables the person in which confidence or trust is reposed to exert influence over the person trusting him, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him."

In our opinion, any reasonable view of either the plaintiff's or the defendants' evidence will induce the logical conclusion that at the time of the execution of the deed in question a confidential relation existed between the parties thereto, and after having considered this circumstance, together with the evidence of the inadequacy of the consideration for said conveyance and the various circumstances surrounding the transaction, we are not convinced that the verdict of the jury and the judgment of the trial court are against the clear weight of the evidence. Both the trial judge and the jury are in a better position to ascertain the weight and preponderance of the evidence than are we. As was said in Watson v. Taylor, 35 Okla. 768, 131 P. 922:

"The jury had the opportunity of seeing the witnesses on the stand face to

face and observing their manner, apparent fairness, and candor, ·or want of it. This is not available to this court in a re-examination of evidence. * * *"

And in Wat-Tah-Noh-Zhe v. Moore, supra:

"A court, like a jury, in weighing evidence, is guided largely by the appearance and demeanor of the witness on the witness stand, and considers the interest or lack of interest, the intelligence, or lack of intelligence, the bias or lack of same, the relation and opportunities of seeing and knowing the matters and things of and concerning which the witness testifies, etc. On review of the testimony in this court, all these important criteria and details are wanting. * * *"

In the third proposition urged for the reversal of the trial court's judgment, the defendants complain of certain allegedly erroneous instructions given the jury. We find it unnecessary to consider these alleged errors, in view of the fact that this is a cause of equitable cognizance, wherein the alleged misdirection of the jury is not a proper basis for assignments of error. McDonald v. Miller, 77 Okla. 97, 186 P. 957; Zwirtz v. Dorl, 123 Okla. 284, 253 P. 75; Mid-Continent Life Ins. Co. v. Sharrock, 162 Okla. 127, 20 P. 2d 154; Ball v. Fleshman, 183 Okla. 634, 83 P. 2d 870.

Since none of the defendants' assignments of error constitute cause for a reversal of the judgment heretofore entered herein, the same is hereby affirmed.

BAYLESS, C. J., and RILEY, HURST, and DANNER, JJ., concur. OSBORN, J., concurs in conclusion. WELCH, V. C. J., and CORN and GIBSON, JJ., dissent.